Argued September 15, affirmed October 13, 1954

## YUNKER *v.* QUILLIN ET AL.

275 P. 2d 240

*Earl A. Fewless,* of Portland, argued the cause and filed a brief for appellant.

*E. Wayne Cordes,* of Portland, argued the cause for respondents. With him on the brief were Alexander G. Brown, City Attorney, and David R. Williams, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and PERRY, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Francis F. Yunker, from a judgment order of the circuit court which dismissed a writ of review issued upon his petition to the Honorable J. J. Quillin, one of the judges of the municipal court of the city of Portland, and to Mr. Dave Palmer, clerk of that court. The plaintiff-appellant submits this assignment of error:

"The court erred in dismissing the plaintiff's Writ of Review."

Immediately following that assignment of error the plaintiff's brief sets forth the following proposition in order to elucidate his contention:

"The defendants' answer herein does not state facts sufficient to constitute a violation by the plaintiff of any city ordinance."

The answer contained a copy of the complaint which had been filed against the plaintiff in the municipal court. Continuing, the brief declares:

"The prime question of law to be decided herein is whether or not a proper or any complaint was filed in the municipal court. * * *

"The main objection to the purported complaint is that it does not comply with the provisions of 26-703 O. C. L. A. which sets forth the requirements of an indictment. The requirements are:

" (1) The title of action specifying the name of the Court to which the indictment is presented and the names of the parties.

" (2) A statement of the acts constituting the offense in ordinary and concise language and without repetition and in such manner as to enable a person of common understanding to know what is intended."

From the foregoing, it appears that Mr. Yunker, the plaintiff, wishes to attack the sufficiency of the complaint which was filed against him in the municipal court of Portland. The complaint charged him with nothing more serious than a traffic violation. Mr. Yunker is a member of the Oregon Bar, and seemingly views this case as one which affords opportunity to effect clarification of a legal principle which engages his attention.

Although the plaintiff now takes the position which is indicated by the quoted language, the petition, which resulted in the issuance of the writ, did not aver the

grounds which the assignment of error and its clarifying proposition submit. Referring to his trial in the municipal court and the practice which was there employed, the petition charged:

"There was no complaint filed prior to said trial; that there was no complaint verified as by law required; that no complaint was read to this plaintiff-petitioner prior to the trial; * * *."

In short, it was based upon a charge that no complaint whatever was ever filed in that case. Thus, the petition charged that, although no complaint was filed, nevertheless Mr. Yunker was adjudged guilty and was assessed with a penalty. ORS 34.030, which is a part of our laws governing the writ of review, says:

"The writ shall be allowed by the circuit court * * * upon the petition of the plaintiff, describing the decision or determination with convenient certainty, and setting forth the errors alleged to have been committed therein. The petition shall be signed by the plaintiff or his attorney, and verified to the effect that he has examined the process or proceeding, * * * and that it is erroneous as alleged in the petition."

It is essential that the petition set forth "the errors alleged to have been committed" in the entry of the order which is under attack. It will be observed that the language just quoted twice makes the demand. We have noticed that the purported errors mentioned in the petition were supplanted, when the brief submitted to this court was prepared, with the contention which underlies the assignment of error and its accompanying proposition. Notwithstanding that fact, we will consider the contention advanced in the brief before us.

The complaint which the city filed against Mr. Yunker in the municipal court assumed the form com-

monly known as a traffic ticket. The entries of an individual nature upon it were written by hand; the other entries are printed material. Following is a copy of the face of the complaint:

"Traffic Citation and Complaint, Portland, Oregon
Abbreviations are explained on back

For office use      Page 143-L4 West on Woodstock
                    Page 170 L 21      E 26035

Name Yunkers, Francis F.   Age 43   Sex M N.B. F.B.

Res. Add 6406 S.E. 4136 Phone SU 6786 Race W

Bus. Add 907 Jackson Tower       Occup. Lawer [sic]
                                 Dist. No. 17
                                 Zone 25
                                 Pav. Dry

Violation     Dis. Sig.

Location S.E. 52th Woodstock

Time for court trial 3 p. m. Monday August 4, 1952

In the municipal court of Portland, Oregon, City of Portland, Plaintiff vs. above-named defendant.

Said defendant is hereby charged as stated above with violating the traffic code of said city (Ordinance No. 75607) passed July 10, 1941, and entitled as printed on the back hereof.

Date 8-4-1952

Alexander G. Brown, City Attorney

By Walter Ake, Deputy

                      Walters # 351
                        Officer No.
                      Colin B. Veach # 216
                        Complainant.

Op. L. 655071

Ve. L. 436 - 292

| State | Make | Model | Year |
|-------|------|-------|------|
| Ore. | Cry | ScW | |
| Mo. | Day | A.M. | P.M. |
| 7 | 27 | | 11/50 |
| Acc. | No.Acc. | Juvenile | |
| A.P.B. —— | ENF —— | Unif.    4″ | |

Upon the reverse side of the complaint appears the jurat which shows that the complaining witness made oath to the complaint before the defendant Palmer, clerk of the municipal court. The reverse side identifies ordinance 75,607 by quoting its title. Further, the reverse side contains a list of abbreviations and their meaning which indicates that "Dis. Sig." means "disregard signal."

Section 3-807, Administrative Code of the City of Portland, says:

"All proceedings before the Court or judges thereof including all proceedings for the violation of any city ordinance are governed and regulated by the general laws of the State applicable to the justices of the peace or justices courts in like or similar cases except as herein otherwise provided."

ORS 156.030 provides:

"The complaint shall be deemed an indictment within the meaning of ORS 132.510 to 132.570, 132.590, 132.610 to 132.690, 132.710 and 132.720, which sections prescribe what is sufficient to be stated in such pleading and the form of stating it."

ORS 132.520 says:

"The indictment, which is the first pleading on the part of the state, shall contain:

\* \* \* \* \*

"(2) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

In 1942 Mr. George Warren, on behalf of the National Conference of Judicial Councils and the National Committee on Traffic Law Enforcement, made a

nation-wide survey of traffic courts, with the objective in view of improving their procedure and elevating their standard. His study eventually assumed the form of a volume entitled "Traffic Courts" which the Judicial Administrative Series published as a public service. Mr. Warren's text in the volume is preceded by a foreword contributed by the Honorable Arthur T. Vanderbilt, who is now the Chief Justice of the Supreme Court of New Jersey. We take the following from the volume (pp. 44-45):

> "Another carry-over from general criminal procedure into the field of traffic offenses is the use of complaints. These were designed for the purpose of acquainting defendants with the charge against them. There appears to be no need for such a document in the case of any traffic offenses except in the small percentage of cases where the officer was not present at the scene to point out the grounds for the charge. Normally a complaint charges the defendant with a felony or a misdemeanor. These are not specific crimes and each of the many offenses they include has several elements. Thus to charge a person with a misdemeanor is meaningless. It might range from assault and battery to criminal libel or petit larceny. For this reason the rule under the common law required that the specific elements be set out in order for the defendant to be validly accused. This was intended to and does protect him from general or ambiguous charges which might mean anything and thus hamper a proper defense. But practically all traffic infractions are not only simple but expressed in their title. The few traffic offenses which cover various omissive or commissive acts, such as reckless driving and 'hit-and-run', are still sufficiently clear to the average person not to present a need for their component elements to be set out embellished by legal phraseology, particularly where the charge has been made on the scene of the violation. Yet in a number of jurisdic-

tions complaints must be filled out for such infractions as overtime parking.

\* \* \* \* \*

"The lack of utility of complaints has resulted in a perfunctory treatment of these documents. Their form as used in most states and cities belies any value or usefulness which it might be thought they possess. Looked at, in the main, as a necessary evil, complaints are usually made so easy to fill in that they are often meaningless. In practically all cities and in most states the complaints used are rote forms duplicating the information usually contained in the ticket or summons given the defendant.

\* \* \*

"It is believed a ticket or summons made in the form of a complaint would satisfy the legal requirements. \* \* \*"

Although lawyers, in writing pleadings, display a peculiar affection for the dead language of the law, a layman who faces a charge of a traffic violation, such as speeding, receives superior information if the complaint charges "speeding" than if it went on with accustomed verbosity to say, "The said defendant did then and there wilfully, unlawfully and contrary to the ordinances in such cases made and provided, drive, propel and operate his vehicle, to-wit, an automobile, \* \* \*"

When Mr. Yunker was confronted with the charge which the above-quoted complaint made against him, he did not ask for additional particulars. He plead not guilty. It appears to us that the complaint, in language which anyone who made reasonable effort could readily understand, charged disobedience to a traffic signal. In short, the complaint made that accusation "in ordinary and concise language \* \* \* and in such manner as to enable a person of common under-

standing to know what'' was intended. Mr. Yunker did not challenge the sufficiency of the complaint until he filed his petition for a writ of review; in fact, he did not attack its sufficiency even then. So far as we know, he found no fault in it until he prepared his assignment of error. We believe that the complaint was sufficient and that the assignment of error is without merit.

By expressing ourselves in the above manner we do not mean to minimize the gravity of the situation when a charge is filed against a motorist in a traffic court. Hundreds of citizens daily receive significant impressions of their government, of their courts and of the administration of justice through being summoned before such courts. The author of these lines knows whereof he speaks, for he was, for four and one-half years, himself judge of the municipal court of Portland. Thirty-seven years of service on the bench has made him realize that traffic charges many times touch the heart and pride of the accused, whereas a case in an appellate court frequently reaches nothing more important than the pocketbook. It is highly essential that traffic courts concern themselves, not only with the rights of the city, but also with the rights of the accused. They must apprise the accused adequately of the charge against him. But we know of no reason for believing that a citizen will obtain a better conception of the law in action and be more fully acquainted with the accusation if he hears the clerk of the court drone off a charge couched in legalistic terms, than if he is handed a traffic ticket which states the charge against him in terms which he readily understands.

Judgment affirmed.