### STATE, v. WHEELER, Defendant.

Ravenna Municipal Court.

No. 19736.   Decided October 27, 1958.

O. J. Schneider, for the State.
G. M. Showalter, for the defendant.

## OPINION

By FRANCE, J.

This matter was heard on defendant's motion to quash the affidavit, which has been treated as a motion to dismiss under Rule X of the Court, the motion to quash being unknown to police or mayor's court procedure by which, in the absence of specific rule, this court is bound. Secs. 1901.21 (A); 1901.14 (B) R. C.

The defendant's contention is two fold:

1—That at the time of arrest he was not adequately apprised of the nature of the charge against him.

2—That by the recitations on the "arrest record" or citation given him on the road by the officer, he was deliberately misinformed that he was to appear for trial, and that it was not intended by the officer that trial should be had on the occasion of defendant's appearance. Defendant claims that such mis-representation, causing him to prepare for trial in good faith when trial was unavailable, constitutes abuse of process.

Since both contentions relate to the "arrest record" copy given the defendant at the scene of the alleged offense, a brief description of the document is in order for the purpose of testing its claimed inadequacy. It consists of a single sheet of paper 4 x 6-¼ inches, labelled "Ohio State Patrol ARREST RECORD" at the top, and is apparently the final, much smudged, carbon copy of a multiple carboned form. It contains spaces in which the following information was to be and was—so far as the smudged carbon can be read—filled in: Name and address of defendant, his sex, age, occupation and driver's license number and its state of origin; the make, type, registration number and state of origin of his vehicle; the date and hour of arrest, the date and hour of trial, the officer's name, unit, post and district. Other information called for by the form and filled in by number only are: route, township, co (county?) arrest number, cause code (?). The name and address of magistrate and type of court are also called for and filled in. Blanks not filled in on the form used are Case number, page number, docket number, accident number, jury and grand jury. A single space 3 x 7/16 inches is left for "Violation revised code number," which is filled in "unsafe operation, §4511.20 R. C.," and another, 1 x 7/16 inches, is denominated "speed m. p. h." and filled in "60/50," which is the sum total of all information relating to the nature of the offense. An additional blank 5 x ¾ inches has pre-printed on it, in red ink, the following legend:

"YOU ARE HEREBY DIRECTED TO APPEAR AT THE TIME AND PLACE DESIGNATED BELOW TO STAND TRIAL FOR THE OFFENSE INDICATED. A FAILURE TO OBEY THIS SUMMONS WILL RESULT IN A WARRANT BEING ISSUED FOR YOUR ARREST."

It is at once apparent that the document in question is not, technically, a summons, although attempted to be denominated as such, because it does not fulfill the requirements of §2935.08 R. C., in being issued by a magistrate or clerk of court. Nor does it appear from the circumstances that the defendant has been "arrested" in the sense of §§2935.03—2935.07 R. C., since he was not detained until warrant could be obtained, nor was he taken before a court or magistrate. It is equally apparent that the paper is merely a carbon copy (with a slight modification where the red printing occurs) of report made to head-quarters of the Ohio State Patrol for the use of its machine records, and that the stopping involved was for the issuance of a "citation" rather than an arrest, a practical necessity unrecognized by the antediluvian code of criminal procedure under which this state operates.

Since the procedure used by the officer is, in a sense, extra-legal and no formal summons was even issued in the case, it is argued that there is no necessity that the "citation" form comply with §2935.08 R. C., by setting forth "substantially the nature of the offense." The court cannot agree with this contention. As a matter of practice the "citation" has been used for many years as a means of obtaining voluntary appearance of the defendant in traffic matters, and has been complied with by the overwhelming majority of those accused of traffic violations just as a formal summons would be. Therefore, in practical, if not legal, effect the "citation" is a summons. The alleged violator appearing at a delayed date in court to explain an occurrence in the past is entitled to his accuser's version of the occurrence equally in the case of the legal and the extra-legal, or practical, summons. It follows that the citation should set forth "substantially the nature of the offense" as required by §2935.08 R. C.

The affidavit filed in court is in the form of the Uniform Ticket used in Michigan, New Jersey and Illinois and in many municipalities in Ohio; much of the same data as to person and vehicle appear as in the green "arrest record." There similarity stops. On the affidavit the following blocks are checked: "Excessive speed, over limit; prima facie unreasonable, 60 M. P. H. in 50 M. P. H. zone night," and "improper passing (left of center) at intersection or R. R. crossing" and below it is written "Did operate in reckless manner so as to endager life or limb of those in lawful use of highway" in violation of §4511.20 R. C. On the "arrest record" appears: "Violation unsafe operation, §4511.20 R. C.," and in another space "speed 60/50 m. p. h." Is the latter description substantially the same as the former?

In the absense of further description the court feels that "unsafe operation" is entirely too loose a term because it comprehends many different types of driver activity, with or without the peril to others inherent in what is commonly called reckless operation. Nor is the cryptic notation "60/50 m. p. h." such as to inform a defendant in a reasonable and proper speed state that he is charged with driving unreasonably fast. State v. McCloud (Mo.), 313 S. W. (2d) 177—Columbus v. Rodgers, 93 Oh Ap 328. The clarity of the citation issued in this case is easily distinguishable from that approved by the Supreme Court of

Oregon in Yunker v. McQuillan Ore. 275 P. (2d) 240, where symbols on the face of the citation were explained in detail on its reverse side. Here there is no explanation, no clarification—merely the copy of a series of coded numbers understandable to members of the enforcement agency involved and without real meaning to anyone else. The first ground of motion is well made.

As to the second ground of motion, it is doubtful that a traffic officer giving a "citation" to an alleged traffic offender is under obligation to inform him, either in writing or otherwise, that if he contests the charge he is likely to have to come back to court on another day than the one originally appointed. Such would be gracious conduct, but graciousness is not required of officers. If the summons, citation or arrest record (whichever we choose to call it) merely stated "you must appear at the stated hour" without more, leaving it to the defendant to ascertain, at his peril, the practice of the court in which he was to appear, as does the typical court summons, it would be unexceptional and unassailable on the ground of misinformation.

But this "arrest record" goes farther. It tells the accused to "APPEAR AND STAND TRIAL" at 7 P. M. on a specific evening when the officer writing it knows, from past experience, that at least 40 other defendants will appear at that hour, that taking of testimony in contested cases at such time is impractical, and that he, as accuser, is not likely even to be present in the court room when the case is called. The whole quoted statement is a lie; it was known to be a lie at the time it is issued, and it would be equally a lie if applied to appearance in most courts of record in Ohio. But while the officer knows it is a lie, the defendant does not know it, and in good faith prepares for trial at a time when, as a practical matter, trial cannot be had. This quoted statement, to be fair to the Ohio State Patrol, was not always a lie; twenty years ago when the patrolman, on catching a violator, took him to the nearest J. P., woke the squire up at night or called him out of the fields by day, the violator could get trial, such as it was, on the spot. It is no longer true, as a general rule, in courts of record; it is now true only occasionally in the courts of the professionally minded county judges, and in the mayor's courts of busy communities. Yet the misleading printed statement persists and becomes more and more a misleading and fraudulent lie with every passing day. The second ground of motion is also well taken.

It would seem, in common fairness, that the resources of the great state of Ohio were equal to the need of informing an alleged traffic violator of the nature of the state's claim and the nature of his scheduled court appearance. The blurred copy of the arrest report designed for agency record keeping obviously does not do so. Many cities and many courts, including this one, have managed to. The use of the copy of the uniform ticket affidavit is available to the Ohio State Patrol equally with other traffic officers in this jurisdiction. Its use has been refused by higher headquarters with the expression: "We will not force our officers to carry the form." which, freely translated from the officialeese of the expression, means "We forbid them to do so." This is permissible

only if the agency can find an equivalent method of apprising defendants of the offense and the appearance as required by Rule III. This it has not done.

Motion to dismiss is sustained and the affidavit dismissed without prejudice to refiling, when the state can demonstrate compliance with criminal rule III, of the court.