EMILIANO MARTÍNEZ AVILÉS, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, RAFAEL L. YDRACH, JUDGE, Respondent.

No. 37. Submitted March 21, 1960.—Decided June 30, 1960.

*Emiliano Martínez Avilés pro se. J. B. Fernández Badillo, Attorney General, Arturo Estrella, Assistant Attorney General,* and *Carlos Látimer, Assistant Attorney General,* for The People.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On September 30, 1958 a policeman intervened with the petitioner for violating the Automobile and Traffic Act while operating a motor vehicle on Km. 20 of Highway No. 2. Pursuant to the provisions of Act No. 93 of June 29, 1954 (Sess. Laws, p. 980) which authorizes the "ticket system" in certain cases of violation of the laws, regulations, and municipal ordinances on traffic, 9 L. P. R. A. (Cum. Supp.) §§ 221–27, the policeman then and there filed a complaint against him before the Bayamón Part of the District Court filling in the printed blanks of a "ticket", and charging him that at 12:15 p. m. at the afore-mentioned time and place, in front of a school in a school zone of 15 miles and from west to east, he operated an Oldsmobile motor vehicle ... license No. 133725 "at 40 miles an hour, without taking precautions for any schoolboy* leaving school." It was set forth in the ticket that the defendant was summoned to appear in the Bayamón Part of the District Court on October 10, 1958 "to plead in relation to the offense charged." In addition to the foregoing, the policeman required him to surrender his driver's license signing the proper receipt thereof which is part of the ticket form, with the warning that said receipt authorized him to operate motor vehicles until the date set for appearance. The petitioner was given copy of the "ticket" with the said receipt, signed by the denouncing policeman.

On October 2, 1958 the "ticket" was sworn by the officer before the clerk of the District Court and was filed. The petitioner did not appear to plead on the date set and on December 3, 1958 a complaint was filed against him in the

---

* It appears thus.

916

ordinary manner for violation of § 15(b) of the Automobile and Traffic Act, charging him with the same offense stated in the "ticket." Pursuant to the original records of the District Court the petitioner was summoned to appear for trial on February 16, 1959. On February 12 he requested the dismissal of the prosecution on the ground that the complaint had been filed after the expiration of the term of 60 days *from his detention*, as provided by subdivision 1 of § 448 of the Code of Criminal Procedure. The District Court refused to dismiss the case and at the petitioner's request the Bayamón Part of the Superior Court issued certiorari to review that denial. After the parties were heard the Superior Court entered an order dismissing the appeal without stating any grounds. Its reasons, however, are revealed in the following transcript of part of the events at the trial:

"Hon. Judge: What is the issue?

"Mr. Martínez: This is what happened, your Honor: On September 30, 1958 a policeman who was patrolling the road from Vega Baja to Bayamón stopped me because I was driving at a high speed in a school zone. He took my license and that is all. Then, on December 3, 1958 he filed the complaint.

"Hon. Judge: How many days later?

"Mr. Martínez: Three or four months later.

"Hon. Judge: And what happened?

"Mr. Martínez: From September to December 3. I filed a motion to dismiss in the lower court.

"Hon. Judge: Did you file it on time?

"Mr. Martínez: On time.

"Hon. Judge: And what was the decision?

"Mr. Martínez: It was dismissed.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Hon. Judge: What does the District Attorney say, according to the opinion of our Supreme Court?

"Hon. District Attorney: That my colleague is not right, since he was not arrested there; he was given a ticket, the information was taken in order to file a complaint within the year of limitation, one year. If he would have been arrested without the information or complaint having been filed and the sixty days had expired, then he is correct.

"Hon. Judge: I ask whether or not the sixty days have expired.

"Hon. District Attorney: They have not.

"Mr. Martínez: I say that this case is different from that of *People* v. *Super. Court, Figueroa, Int. ...*" (He argues.)

"Hon. Judge: Were you ever arrested?

"Mr. Martínez: If I had not surrendered my license I would have been arrested. The seizure of my license implies an arrest because if I had not turned it in I would have been taken to headquarters.

"Hon. Judge: An arrest is an arrest: detention of your freedom. Colleague, I sympathize greatly with your viewpoint. So deeply do I sympathize that I have just reversed a similar opinion of mine; but I am not the one who makes the law, the Legislature does that. And based on the case of *People* v. *Super. Court; Figueroa, Int.* (Bayamón Part), decided on July 8, 1959, I am compelled to decide, as I hereby decide, that certiorari does not lie on the foregoing grounds."

Since in the light of the facts of this case we were doubtful as to whether the recent decision in *People* v. *Super, Court; Figueroa, Int.*, 81 P. R. R. 445, upheld such interpretation of the trial judge, and since now there is a new question which we have not decided involving the application of § 448 of the Code of Criminal Procedure to the "ticket system" authorized by Act No. 93 of June 29, 1954, we issued certiorari.

By said Act the Legislature established and authorized the "ticket system" for traffic violations except those violations expressly excluded. It provided in § 1 that the ticket forms for complaints shall contain the blank spaces and printed matter required so that the marks made or the spaces filled in by the denouncing policeman will produce the necessary elements constituting the offense charged. When intervening in such a violation, the policeman shall sign the ticket, which shall contain the summons to the defendant to appear before the Court on a given date not sooner than five nor later than fifteen days counting from the date of the ticket; he shall deliver a copy to the person denounced;

he shall swear to the original before a competent officer and file the same in the corresponding part of the District Court. After this action the policeman is considered a judicial officer for all legal purposes. Section 3 of the Act provides verbatim as follows:

"The persons denounced through the procedure herein established may appear to plead before the corresponding part of the District Court at any time before the date fixed in the ticket. To such effect, the Court may accept the copy of the ticket delivered to the defendant in lieu of the original, until the latter is filed. If defendant pleads not guilty or does not appear before the Court, then a complaint shall be ordered entered in the ordinary manner and a date shall be set for the hearing."

Pursuant to § 4, at the moment of intervening, the public peace officer shall require from the offender the surrendering of his license to operate motor vehicles in Puerto Rico. *"If the offender surrenders his license, he shall not be arrested,"* and the officer shall keep the license and return in lieu thereof a proper receipt which shall operate as the license until the date set to appear in Court. The license shall be delivered to the Secretary of the corresponding part of the District Court at the time of filing the complaint. In the course of the proceedings, the Court may extend the term during which the receipt may serve the purposes of the license, not beyond the expiration date of the latter. Once the case has been *"decided"* by the District Court, *"or at any moment prior thereto, if defendant gives provisional bail to the satisfaction of the court,"* the license shall be returned to him, unless there exists any of the causes for its suspension or cancellation, or unless it has expired. Every license withheld by any officer or court shall be understood to be suspended if the licensee drives a motor vehicle while holding only the receipt, after the effective date thereof has expired. This is the end of the pertinent provisions of Act No. 93.[1]

---

[1] Section 5 of Act No. 93 contains specific provisions on the procedure to be followed when a motor vehicle is caught parked illegally *without a*

Section 448 of the Code of Criminal Procedure (1935 ed.) 34 L.P.R.A. § 1631, provides that the Court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed (1) where a person "has been held to answer for a public offense," if the information is not filed against him within sixty days "thereafter."

The People alleges in the first place that § 448 (1) is not applicable to this proceeding and contends that said subdivision implies the physical detention and arrest of the defendant, as a previous step to the filing of the complaint, on which the sixty-day term begins to run; and that the omission of this previous step of the physical arrest in the system established by Act No. 93, renders the system incompatible and irreconcilable with the requirement of sixty days for the filing of the complaint. In other words, that by omitting the physical arrest of the person denounced, the lawmaker eliminated the starting point to count the term of sixty days and therefore this provision of § 448 cannot be invoked. We disagree. Apart from assuming that the expression "held to answer for a public offense" in its legal context only means physical arrest or detention of the person and excludes everything else, which is not necessarily so, as we shall set forth hereinafter, it is not correct that Act No. 93 eliminates from this procedure the step of arrest of the person for any pertinent purposes of § 448. The Act rather conditioned the arrest—whose well-known purpose is to compel the violator to appear at the judicial proceeding and serve the sentence imposed on him or to deposit bail in lieu thereof to guarantee said appearance—to the fact that the person denounced surrender his driver's license to the officer (in which case the Act reads: "he shall not be arrested") as a means

---

*driver.* It is well to clarify that we are not considering in any way whatever the situation mentioned in § 5 in cases of unknown identity of the driver who parked the vehicle. The point at issue today is limited to actual situations as those of the case at bar where the authorities have intervened in the afore-described manner.

to insure his appearance, the license withheld serving as bail.[2] A statute must be construed so as not to defeat a constitutional purpose. In view of the meaning given by the Attorney General to the expression "held to answer," his interpretation of Act No. 93 would inevitably exclude from these criminal proceedings the constitutional guarantee of speedy trial as it is legislatively defined by the provisions of § 448; in which case the courts would have to produce their own version of the guarantee in terms of time. It is stated that the constitutional right is not impaired since the Act itself provides that the summons shall not be made for a date subsequent to the fifteen days of the complaint, which requires undoubtedly that the "ticket" be filed in court by that time; and that in the case at bar two days after the events a "ticket" had already been filed on which the violator could plead.

Undoubtedly it would be so if based on the "ticket" the defendant could also be tried on the merits and the court determine his guilt or innocence. But the Act did not pro-

---

[2] Pending decision of the case the defendant is deprived of his license and cannot drive after the day set for him to plead in the "ticket", unless he obtains the extension of the effectiveness of the receipt or restitution of said license by posting bail in the ordinary manner. Hon. Arcilio Alvarado, in reporting in the floor Bill No. 1206, which became Act No. 93, stated as follows:

"Appearance is guaranteed by a procedure contained in the Bill, by virtue of which when the policeman intervenes he seizes the operator's license, keeps it and gives him instead a receipt prepared beforehand, in due form and with the proper guarantees, signed by him and stating that he has seized the operator's license. And that receipt takes the place of a license until the date set for the trial, for the appearance, the last date indicated for the trial. Hence that with that receipt the person continues operating automobiles up to a certain date, that of trial. As soon as his case is disposed of in court he recovers his license to take it with him. And there will be no trouble. As soon as the case is decided in court, the secretary, who by now has the complaint filed by the policeman, will give it to him, or if the policeman has not delivered it to him yet, he shall issue the proper order so that it is delivered to him.

"We believe that this is a great system, *it establishes a greater guarantee of appearance than the present one*, which is none except when bail is posted and even when it is often difficult to locate the persons." (Italics ours.) IV-3 *Journal of Sessions*, p. 1488.

vide thus. The integral idea of a speedy trial is explained in both paragraphs of § 448 linked to each other: an information *filed* within a specific period not greater than 60 days, and a trial to be held within 120 days after the *filing* of the information. From that interdependence of both provisions emerges the principle in our case law that unless there is good cause to the contrary, or waiver, a trial cannot be held validly under an information filed untimely, even where the latter were to be held within 120 days from its filing; and said information must be dismissed. *Cf. People* v. *Ayala*, 19 P. R. R. 888, reaffirmed in *People* v. *Díaz*, 60 P. R. R. 528; *Ferrer* v. *District Court*, 60 P. R. R. 608; *Segarra* v. *District Court*, 60 P. R. R. 455, 456; *Corbet* v. *District Court*, 46 P. R. R. 247; *Dyer* v. *Rossy*, 23 P. R. R. 718, 726; *People* v. *Cruz*, 34 P. R. R. 206, 207; *People* v. *Díaz*, 32 P. R. R. 816; *People* v. *Otero*, 30 P. R. R. 304 (but see *People* v. *Alvarez*, 50 P. R. R. 100 as to the time to request it) ; *Ex parte Sánchez*, 45 P. R. R. 38, 40–41; *The People* v. *Quilinchini et al*, 7 P. R. R. 206, 209.

We said that Act No. 93 does not permit a trial on the merits based on a "ticket." If the violator fails to appear to plead, or if he appears and pleads not guilty, the statute provides that *a complaint shall be ordered entered in the ordinary manner*. It appears therefrom that the preparation of the "ticket" in the scene of events notified to the violator, and its filing in court within a brief term are steps inserted by Act No. 93 in the proceeding for the sole purpose of enabling a court to receive a plea of guilty, automatically and without further ado, if the violator wishes to make it and to render judgment accordingly, thereby disposing rapidly of a considerable number of traffic cases. If on the date set to appear the violator fails to do so or pleads not guilty, the "ticket" has served its function and the case continues its ordinary procedure except that because

of the violation itself the defendant does not have to furnish bail while his license is withheld in court.[3]

If we consider that with the filing in court of the "ticket" —which is not the complaint or information on which a trial may be held—the provisions of subdivision (1) of § 448 are complied with, the meaning of speedy trial mentioned in the Act would be entirely altered because the integration of its two elements would be split, with the result that up to the expiration of the prescription period of one year the "ordinary" complaint could be filed with or without good cause for the delay, and ultimately a trial would be held long after it is contemplated by the Act. Accordingly we conclude that in order to comply with the provisions of § 448 (1) the "ordinary" complaint underlying the trial of the violator must be filed, in absence of good cause to the contrary, within the term of 60 days provided in said paragraph.

---

[3] In this respect, Mr. Alvarado stated while reporting the Bill:

"He hands him a summons for a specific date which cannot be sooner than five nor later than fifteen. There is a margin of ten days, and at the same time he gives him a ticket, which was *schematically* established when the blanks were filled in. With that document in his hands and already summoned, the individual may appear in court at any time *if he wishes to plead guilty.*"

.	.	.	.	.	.	.	.
.	.	.	.	.	.	.	.

"When he appears, if he is not guilty, he pleads not guilty. If he is guilty, then he so pleads and is immediately sentenced, he pays the fine and is free to go home. If he is not guilty, he pleads not guilty. If he pleads not guilty, then a trial is held in due time, *with a complaint drafted in the classical juridical form, with the elements of the offense and a proceeding like the present one is conducted.* But it greatly facilitates the procedure when the person wishes to plead guilty and maintains outside the courts a great number of policemen and witnesses who are now summoned in vain because they arrive there and then the defendant pleads guilty.

"To plead guilty it is not necessary to summon a policeman and deprive the People of his services, nor summon the witnesses, but rather he goes alone and pleads guilty at any time." (Italics ours.) IV-3 *Journal of Sessions,* p. 1488.

In view of the fact that a judgment of conviction can be entered on a "ticket" based on a plea of guilty, the Act requires in order to meet the constitutional requirement, —Art. II, § 11 —that the "ticket" also contain the necessary elements constituting the offense.

This leads us to a second point, to wit: when did the 60-day period in this case begin to run, to see whether or not it had expired on December 3, 1958, date when the "ordinary" complaint was filed. The Attorney General alleges that even if § 448 applied in these cases, on September 30, 1958 the petitioner was not held to answer "merely because on that date a public officer summoned him and gave him a ticket and required him to surrender his driver's license." After discussing the case of *María Figueroa, supra,* he concludes that he does not see "how a defendant who is not physically detained nor has been in any way arrested and is not even compelled to appear in court, can be 'held to answer' for an offense even if such words of § 448 (1) of the Code of Criminal Procedure are most liberally construed."

As to the scope and legal meaning of the phrase "held to answer for a public offense" used in § 448 (1) we fortunately have the case of *María Figueroa, supra,* where a thorough study was made by this Court. There is nothing more to be added. In the face of the theory presented there that one is held to answer for a public offense from the time a public officer or other person authorized to practice arrests observes that offense passively, although without intervention of any kind on his part, with utmost clarity we stated: [81 P. R. R. 449]

---

The "ticket system" is common in the states but frequently the procedure is regulated administratively (New York) or by local ordinances and is not very uniform. We have not encountered a precedent directly applicable to this case. In California, which has a very similar proceeding, if the defendant signs agreeing to appear he will not be arrested. (Failure to appear after agreeing thereto is in itself and separately a misdemeanor.) If the violator does not appear or pleads not guilty, a sworn complaint must be filed as provided by the Penal Code and the ordinary proceedings are followed. But as distinguished from us, California permits the violator to waive in writing to the filing of the formal complaint and to be tried on the "ticket." Vehicle Code of 1959, Procedure on Arrests, § § 40300–515. (40513), 67 West's Anno. Cal. Codes (1960). In *Ralph* v. *Police Court of City of El Cerrito,* 190 P. 2d 632 (1948) it was held in California that the court lacked jurisdiction to try a traffic violator who had pleaded not guilty to the "ticket", without the ordinary complaint provided by the Code having been filed, said violator not having waived it. In *People*

"An analysis of the language used in this section throws light on the meaning of the phrase 'held to answer' and allows us to fix the two poles between which the term of sixty days shall run. The end pole is the date when the information is filed—*People* v. *Petrovich*, 36 P. R. R. 548, 549 (1927)—and the other must necessarily refer to a previous act. We also know that there must necessarily exist the act of a third party (a peace officer) with respect to the person: it is another who causes that 'a person has been held to answer.' Moreover, it is obvious that the defendant must be informed of the action of that third person who places him in the position to be 'held to answer.' No one can answer if he is completely ignorant of the act that compels him to answer. Finally, that act of the third person has to be such as will place the defendant in a position to be 'held to answer for a public offense'; any other act that does not have such effect does not conform to the language of this paragraph. In brief, this exegesis shows that the starting point for the sixty-day term must be the act of the third person, prior to the filing of the information, known to the person concerned, and which must have the legal effect of compelling that person to answer for a public offense."

Historically it is then explained how the phrase of our section originates in § 872 of the Penal Code of California as the determination of the magistrate who presided the preliminary hearing, after hearing evidence of an offense, ordering that the defendant be held to answer for said offense, which determination automatically produced an order

---

v. *Agnew*, 242 P. 2d 410 (Cal. 1952) it was decided that it had been an error (although by other statutory provisions it did not warrant reversal) to try a violator who had pleaded not guilty when summoned on the "ticket", and against whom a formal complaint was filed and who had a trial without having been arraigned on this complaint. In *People* v. *Scott*, 3 N. Y. 2d 148, 143 N. E. 2d 901 (1957), referring to its own system of summons (the "ticket" is not sworn and was interpreted merely a notice to appear to be charged with a specific crime), New York dismissed a judgment rendered on the basis of a guilty plea made to the summons without an ordinary sworn complaint having been filed. We did not even insinuate that such would be the situation here. In *Yunker* v. *Quillin*, 275 P. 2d 240 (1954) Oregon deemed sufficient a complaint in the form of a "ticket" with the information it contained to base defendant's conviction thereon. The Act apparently applied, Acts of Oregon, of 1953, chap. 162, did not provide like ours that the filing of the ordinary complaint must be ordered unless a person pleads guilty.

for commitment of the defendant as provided by the authorities (§ 873) until further proceedings (§ 809 *ante, now* 739 ) or until he be admitted to bail if the nature of the offense so permitted (§ 875) ; and how here, where the preliminary hearing was not introduced, the phrase was identified with the person's arrest: "in the case of a complaint or an information, regardless of whether it was a justice of the peace, a prosecuting attorney, or a policeman who initiated the proceedings, the period began to run at the time of the arrest or detention of a person for the commission of a public offense." [81 P. R. R. 453]

In its historical legal meaning, by its origin, the phrase meant somewhat more than the concept of physical arrest. As a question of fact, upon appearing before the magistrate the person had already been arrested with or without a warrant, and could have even furnished bail. (Cal. §§ 813–29; 834–51; 858.) The phrase therefore was not synonymous with physical arrest although it comprised the latter. It also included the conclusion or determination of the magistrate, an official act, that a person should answer before the law for the commission of an offense, although under our procedural situation every detention or arrest of a violator by a competent authority constitutes being held to answer for the purposes of the term of 60 days. In the strict legal sense of the phrase, the word "held" cannot be taken entirely isolated from the rest of it.

Situations may arise, as that presented by Act No. 93 involved herein and by the former method to prosecute corporations criminally, or under any proceeding dispensing with arrest[4] where the physical detention does not take place and yet the person is bound or subject to answer for an offense. For such reasons we did not reverse the case of *People* v. *Carmen Centrale, Inc.*, 46 P. R. R. 478, but rather

---

[4] As example, see federal Rule 4 (a), (b) (2) and Rule 7 (a) of Criminal Procedure submitted to the Legislature on January 21, 1960.

explained its scope. Under those circumstances, § 448 should be interpreted so as not to thwart the constitutional guarantee of a speedy trial.

To allege in this case that, the petitioner having been given a ticket on September 30, 1958 for a traffic violation at the time of committing the offense; having been summoned on that date with copy of the complaint to appear in Court to plead, it being imperative by law that the complaint be filed; having been deprived of his driver's license by the officer to insure his appearance which was equivalent to bail, and which exposed him to penalty if he drove after the date of appearance, does not mean that the petitioner was from that day bound or subject to answer for a public offense, would be to strip of all meaning the above-stated words of the opinion of *María Figueroa*. The complaint on which the petitioner will be tried having been filed after the expiration of the term of sixty days as of September 30, 1958, and The People not having set up good cause to justify the delay, it should have been dismissed.

For the reasons stated the order appealed from entered by the Bayamón Part of the Superior Court is set aside and the case remanded to the trial court for further proceedings compatible with this opinion.