CITY OF CLEVELAND, APPELLEE, *v.* AUSTIN, APPELLANT.

[Cite as Cleveland v. Austin (1978), 55 Ohio App. 2d 215.]

---

216

*Ms. Almeta A. Johnson*, city prosecutor, for appellee.
*Mr. Paul Mancino, Jr.*, for appellant.

PRYATEL, J. On June 7, 1976, defendant-appellant Dexter Austin was convicted of three traffic violations: driving without a license in violation of Section 9.3109 of the Codified Ordinances of the city of Cleveland; reckless driving in violation of Section 9.1304 of the Codified Ordinances of the city of Cleveland;[1] and eluding a police officer in violation of R. C. 4511.02.

The record reveals that on December 5, 1975, police officer David Cavulic observed defendant run a stop sign. In a marked police car, Officer Cavulic proceeded to follow defendant's vehicle. When defendant sped up, Officer Cavulic turned on his red lights and siren and chased the defendant at speeds over seventy-five miles per hour. Defendant was apprehended when he struck a tree.

On appeal, defendant raises six assignments of error:

"1. The court committed prejudicial error in not granting the Motion for Discharge of the defendant by reason of the fact that he had not been brought to trial within the time specified by Section 2945.71 of the Ohio Revised Code.

"2. The court committed prejudicial error in not dismissing the charge of fleeing a police officer as it did not charge an offense.

"3. The court committed prejudicial error in not dismissing these charges as none of the complaints are sworn to.

---

[1]These sections were amended effective July 6, 1976, and were renumbered as Sections 435.06 and 433.02 respectively of the Codified Ordinances of the city of Cleveland effective October 31, 1976.

"4. The court committed prejudicial error in not requiring the prosecuting attorney to produce the statement made by the arresting officer, David Kovulic [*sic*] when requested during his cross-examination.

"5. The court committed prejudicial error in permitting the police officer to testify concerning the status of a license or lack thereof by the defendant.

"6. Other errors apparent upon the face of the record and occurring during the course of the proceedings."

I.

Appellant alleges that the trial court erred when it denied his motion to dismiss the charge of fleeing a police officer as the complaint did not state all of the material elements of the offense since it did not include the word "willfully."

The complaint by way of a uniform traffic ticket filed in the Ceveland Municipal Court reads as follows:

"Eluded police car—Fleeing from police car from traffic viol [*sic*]—Involved in accid. [*sic*] in violation of Sec. No. 4511.02 Ohio Revised Code."

R. C. 4511.02 insofar as applicable provides:

"No person shall operate a motor vehicle so as to *willfully* elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop." (Emphasis added.)

The Ohio Constitution guarantees that every defendant has the right to know "the nature and cause of the accusation against him." Section 10, Article I, Constitution. Ohio courts have consistently held that the complaint must state all of the essential elements of the offense or it is invalid. See *State* v. *Cimpritz* (1953), 158 Ohio St. 490; *State* v. *Goodman* (1966), 8 Ohio App. 2d 166; *In re Campfield* (1950), 91 Ohio App. 74; *Lerch* v. *City of Sandusky* (1926), 23 Ohio App. 109. A review of these cases reveals that they dealt with indictments, or were decided before the advent of the Ohio Traffic Rules.

Under authority of R. C. 2935.17 and 2937.46, the Supreme Court of Ohio promulgated Uniform Traffic Rules for all courts inferior to the Court of Common Pleas effective

January 1, 1969.[2] Traffic Rule 21 mandates the use of a specific form for the issuance of traffic citations, which requires a *description* of the offense and citation to the statute or ordinance allegedly violated.

In weighing the reasons for the adoption of the Uniform Traffic Ticket, it must be borne in mind that various localities were issuing different tickets and that there is a huge volume of citations dispensed annually throughout the state. For instance, in Cleveland, 69,582 of the 95,695 (over 73%) of the municipal criminal code violations, were traffic infractions.[3] These citations are issued at the scene of the violation, throughout the day and night, in rain, snow or ice, by officers (who are not lawyers), often in areas perilous to both the accused and the officer, such as high speed freeways. To achieve the goals of simplicity and uniformity, and to eliminate unjustified expense and delay, the ticket requires only a description of the offense together with a reference to the law that defines the alleged violation.

On this principle the Supreme Court of Wyoming said, in its *per curiam* opinion in *Swisse* v. *City of Sheridan* (Wyo. 1977), 561 P. 2d 712, 713-14:

"The purpose behind uniform traffic citations is to provide for the speedy and effective disposition of traffic offenses. Within such an informal-procedure it is not necessary that the charge be set forth with the same technical precision and formality as required in an information or verified complaint. All that is required is that the accused be informed of the nature of the offense with which he is charged. Such a requirement can be fulfilled by stating the commonly used name of the offense and the statute or ordinance violated. This is sufficient even if it means the

[2]The purpose of the Ohio Uniform Traffic Rules is to "secure the fair, impartial, speedy and sure administration of justice, simplicity and uniformity in procedure, and to eliminate unjustified expense and delay." Traffic Rule 1(B). These rules were subsequently amended in 1971, 1972 and 1975.

[3]Cleveland Municipal Court, Annual Report, January 1, 1976, to December 31, 1976.

accused may be required to inquire of the arresting officer or someone else exactly what the offense includes. Such a philosophy and point of view is neither original nor without authoritative support. *Harper* v. *Field,* Okla. Crim. 1976, 551 P. 2d 1161, 1162; *People* v. *Clyne,* Colo. 1975, 541 P. 2d 71, 72; *State* v. *Ebert,* 1972, 10 Or. App. 69, 498 P. 2d 792; *People* v. *Brausam,* 1967, 83 Ill. App. 2d 354, 227 N. E. 2d 533, 539; *State* v. *Waggoner,* 1961, 228 Or. 334, 365 P. 2d 291; *Yunker* v. *Quillin,* 1954, 202 Or. 362, 275 P. 2d 240. The notation 'careless driving' accompanied by reference to the ordinance number informed defendant with the nature of the offense charged with all the specificity needed.''

This reasoning has been followed in other jurisdictions. In *State* v. *Atkinson* (1977), 28 Ore. App. 909, 562 P. 2d 978, the Court of Appeals of Oregon stated, at ——Ore. App. ——, 562 P. 2d at 982:

''The purpose of the uniform traffic citation system 'is to permit a charge against a motorist to be made with a minimum of formality,' *State* v. *Ebert,* 10 Or. App. 69, 498 P. 2d 792 (1972), and the uniform citation is not controlled by the statutes which apply to indictments. *State* v. *Waggoner,* 228 Or. 334, 365 P. 2d 291 (1961). In *Waggoner* the complaint charged the offense simply as DUIIL, the Supreme Court in rejecting a challenge to the complaint said:

'' 'It is readily apparent that the legislature intended to make traffic complaints effective even though a person defending against one might have to make some reasonable inquiry of the arresting officer or of some other person in order to know exactly what offense is charged. * * *' 228 Or. at 337, 365 P. 2d at 292. Given the purposes of the uniform traffic citation system the same 'reasonable inquiry' principle would apply to challenges of alleged defects in other parts of the citation. * * *''

We find the same thought expressed in *People* v. *Clark* (1977), 47 Ill. App. 3d 568, 362 N. E. 2d 407:

''Traffic offenses need not be charged with the specificity of indictments. Naming the offense and citing the

statute are generally sufficient." *Id.*, at 571, 362 N. E. 2d at 409.

We believe it is sufficient if the ticket gave the accused *notice* of the offense and reference to the law under which he is charged. To expect the officer to recite the law completely, refer to the ordinance involved, as well as describe the result of the offense such as an accident, so that the court has all the facts, places an onerous burden on the enforcement agency, that is impractical and unnecessary. Nor is there room for all of this information in the limited space provided by the ticket. We hold that the ticket need not contain every element of the offense in its description. It will satisfy legal requirements if it apprises the defendant of the nature of the charge *together* with a citation of the statute or ordinance involved. Thus, a uniform traffic complaint charging the following is sufficient to notify the accused of the nature of the charge and the cause of the accusation: "Eluded police car—Fleeing from police car from traffic viol [*sic*]—Involved in accid. [*sic*] in violation of Sec. No. 4511.02 * * *."

The appellant relies on *City of Euclid* v. *Sivillo*, unreported, No. 29861, decided by this court on July 28, 1970.

At that time, the usual procedure of this court was to issue a journal entry without a supporting opinion. There we sustained appellant's Assignments of Error 1, 2, 3 and 4. Only Assignment No. 4, which contended that the affidavit failed to allege facts which constituted an offense, is pertinent here.

In that case the ticket alleged that the defendant did "operate a vehicle and attempted to elude and flee police after hearing an audible and visible [*sic*] signal to stop in violation of Section 335.04 of the Codified Ordinances of Euclid." Appellant's brief, *City of Euclid* v. *Sivillo*, at 13.

The objections to the affidavit were based on (1) the absence of the word "willfully" and (2) that the defendant was charged with an *attempt* to violate the particular ordinance.

From the briefs filed there, the cases recited in support of Sivillo's argument dealt with crimes based on

sworn affidavits or indictments either not connected with traffic violations or rendered before the the adoption of the Ohio Traffic Rules and therefore are inapplicable in the instant case. We conclude that the assignment of error in *Sivillo* was sustained on the alternate allegation that the affidavit was faulty because it recited an attempt to violate the ordinance which, of course, was not defined as a crime.

We hold that ruling to be inapposite here.

Recently this court has been called upon to consider the required contents of a traffic ticket on two occasions. In *City of Solon* v. *Crapser,* unreported, Court of Appeals for Cuyahoga County, No. 35518, decided March 3, 1977, the appellant was charged with "driving while under the influence in violation of 333.01(a) Cod. Ord. of Solon." Section 333.01(a) makes it illegal to drive while under the influence of alcohol or any drug of abuse, or both. Since the ticket failed to charge which of the two influenced the driving of the appellant, it was held that the ticket did not state a cause of action. Nor would a reading of the ordinance referred to in the citation supply the "nature of the accusation."

In *Village of Mayfield* v. *Muenster,* unreported, Court of Appeals for Cuyahoga County, No. 36377, decided July 7, 1977, the appellant was charged with "changing course in violation of Sec. No. 331.14, Cod. Ord. of Mayfield." This ticket was held to be invalid because the general description was based on a charge other than the one relied on for prosecution. As will be noted, both *Crapser* and *Muenster* are readily distinguishable from the case at bar. In each of the former cases the language of the ticket was insufficient to describe the offenses to bring it within the purview of the ordinance allegedly violated. In the case at bar, the nature of the offense was apparent on the face of the ticket and defined by a reference to the ordinance violated.

We hold that the language of the ticket in the instant case is sufficient to advise the defendant of the "nature and cause of the accusation against him." It apprises him of the nature of the offense and refers him to the ordin-

ance that gave rise to the citation. This assignment of error is therefore overruled.

## II.

Appellant contends that the charging complaints were invalid because they were not sworn to before a person authorized to administer oaths.

At the outset it should be noted that the defendant's objection to the absence of a sworn affidavit was not timely made. Defendant did not object to the form of the affidavit until the close of the trial. Traffic Rule 11(B)(1)(b) provides that all defenses and objections based on defects in the complaint other than lack of jurisdiction or failure to charge an offense must be raised before a plea is entered. A failure to do so constitutes a waiver of a defendant's right to raise those objections. Traffic Rule 11(F). Notwithstanding the untimeliness of defendant's objection, due to the significance of the issues raised we address the merits of defendant's assignment.

Appellant relies on Criminal Rule 3[4] as authority for the proposition that the complaint must be given under oath. He is correct in asserting that Criminal Rule 3 requires a sworn affidavit. However, Criminal Rule 3 does not appy to the instant case. Criminal Rule 1(C)(3)[5] ex-

---

[4]"Complaint.

"The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. *It shall be made upon oath before any person authorized by law to administer oaths.*" (Emphasis added.)

[5]Criminal Rule 1(C) reads as follows:

"*Exceptions. These rules, to the extent that specific procedure is provided by other rules of the supreme court or to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure* (1) upon appeal to review any judgment, order or ruling, (2) upon extradition and rendition of fugitives, (3) *in cases covered by the Uniform Traffic Rules,* (4) upon the application and enforcement of peace bonds, (5) in juvenile proceedings against a child as defined in Rule 2(2) of the Juvenile Rules, (6) upon forfeiture of property for violation of a statute of this state, or (7) upon the collection of fines and penalties. Provided that where any statute or rule provides for procedure by a general or specific reference to the statutes governing procedure in criminal actions, such procedure shall be in accordance with these rules." (Emphasis added.)

cludes from the application of the Criminal Rules all cases covered by the Ohio Uniform Traffic Rules. Such is the case here. Traffic Rule 3 (not Criminal Rule 3) specifies the necessary procedures for the issuance of the traffic ticket.[6] The rule provides that "[a] law enforcement officer who issues a ticket shall complete and sign the ticket, serve a copy of the completed ticket upon the defendant and, without unnecessary delay, file the court copy with the court." (The rule provides further that when an officer writes a ticket at the scene of an alleged offense, he shall not be required to rewrite the complaint in order to file it unless the original is illegible.) It does not require that the officer swear to the veracity of the complaint before an appropriate authority. However, all Ohio Uniform Traffic Tickets are subject to the following caveat: "The issuing-charging law enforcement officer states under the penalties of perjury aand falsification that he has read the above complaint and that it is true.'" Thus, all law enforcement officers continue to attest to the accuracy of the ticket to protect the interests of the motorists. See 2 Shroeder-Katz, Ohio Criminal Law and Practice 516 (1974).

Appellant cites *State* v. *Zdovc* (1958) 106 Ohio App. 481, as further authority for his position. This court held in *Zdovc* that all proceedings subsequent to the filing of an affidavit which was not sworn to by the arresting officer were void *ab initio* and of no legal effect. This case was decided prior to the promulgation of the Traffic Rules in 1969 and therefore is no longer applicable. We find no error in the form of the complaint in this case. Therefore, this assignment of error is overruled.

## III.

Appellant also contends that the trial court erred when it refused to order the production of a statement made by the arresting officer when such statement was requested for the purpose of cross-examination.

During the course of his cross-examination of Officer

---

[6] In traffic cases the complaint and summons shall be the "Ohio Uniform Traffic Ticket." (Traffic Rule 3.)

[7] Traffic Rule 21 mandates the use of specified forms for all traffic offenses.

224

Cavulic,. pursuant to Crim. R. 16(B)(1)(g),⁰ defense counsel requested a copy of a written statement .made by Cavulic. The court denied the motion because the request was not made prior to trial.

Criminal Rule 12(B)(4) provides that requests for discovery pursuant to Criminal Rule 16 must be raised before trial. Criminal Rule 16 (B)(1)(a) through (f) recites the information susceptible of such discovery. However, Criminal Rule 16(B)(1)(g) dealing with in camera inspections of a witness' statement provides that:

"[u]pon completion of .a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement."

In reading these sections in *pari materia,* .it appears that the statement of the defendant or his codefendant is open to discovery before trial, but the statements of other witnesses are available for in camera inspection upon completion of their direct examination.

We find that the trial court erred in refusing appellant's request for an in camera inspection. of the witness' statement. The language of the rule is clear that the motion may be made upon the close of the witness' direct ex-

⁰Rule 16(B)(1)(g) reads as follows:

"(g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to' be made available to the appellate court in the event of an appeal."

amination. It would be futile for the request to be made before trial because counsel could not predict any inconsistencies at that juncture. We hold that a demand for an in camera inspection of a witness' statement pursuant to Crim. R. 16(B)(1)(g) may be made after the completion of the direct examination and that it is mandatory that the court grant defendant's motion for such inspection. *State* v. *Ellis* (1975), 46 Ohio App. 2d 102. *See also, State* v. *White* (1968), 15 Ohio St. 2d 146.

Notwithstanding our finding that the trial court erred in denying defendant's request for inspection, this assignment of error must be overruled for a failure to comply with Criminal Rule 16(B)(1)(g) which provides: "[w]henever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal." Since a copy of the requested statement was not "preserved" or included in the record, we are unable to determine the effect, if any, that the court's denial placed on defendant's defense. In the absence of any showing of prejudice, this assignment of error is overruled. Crim. R. 52(A).

## IV.

For his fifth assignment of error, appellant alleges that the court erred in permitting the police officer to testify about the status of appellant's driver's license. He contends that this evidence was hearsay as it was not based upon the personal knowledge of the officer and therefore should not have been admitted. He complains about the following testimony:

"Q. Were you able to determine whether or not Mr. Dexter Austin had a driver's license?

"Mr. Mancino: Objection.

"The Court: That is one of the charges.

"Mr. Mancino: I know, but 'determine,' that would be hearsay.

"The Court: Rephrase your question.

"By Mr. Rini: [of the officer]

"Q. Were you able to determine whether or not Mr. Dexter Austin was permitted to drive within our state

highway system as being a registered driver and licensed driver?

"Mr. Mancino: Objection.

"The Court: Officer, did Mr. Austin have a driver's license?

'The Witness: Not to my knowledge, no sir.

By Mr. Rini:

"Q: Did you request a driver's license from him?

"A. Yes, sir.

"Q. Did he present you one?

"A. No, he did not."

Hearsay evidence is testimony in court regarding "a declaration by a person, not under oath and not subject to cross-examination, offered to prove the truth of the matter asserted." *Potter* v. *Baker* (1955), 162 Ohio St. 488, 494. *See, generally, Summons* v. *State* (1856), 5 Ohio St. 325, 343; McCormick on Evidence, Section 246 (2d ed. 1972) [hereinafter McCormick]. Testimony does not constitute hearsay if it is based upon the personal knowledge of the witness. Under such circumstances the witness is available for cross-examination so that the opposing parties may determine the reliability of his testimony. The absence of cross-examination of the declarant is perhaps the most important justification for the exclusion of hearsay testimony. McCormick, at page 583.

We find nothing objectionable in the above testimony. The officer was not permitted to testify as to what he determined from some other person. He merely stated that, based on his own knowledge, appellant did not have a license—that when asked to produce a license, appellant failed to do so. This does not constitute hearsay. *Potter* v. *Baker, supra.*

This assignment of error is overruled.

## V.

Appellant contends that the trial court committed prejudicial error when it denied his motion for discharge based upon failure to bring him to trial within the thirty days required by R. C. 2945.71.'

---

"'Sec. 2945.71. Time within which hearing or trial must be held.

"(A) A person against whom a charge is pending in a court not

The record reveals that appellant first appeared in court on December 5, 1975. The case was continued until January 16, 1976, apparently due to the defendant's hospitalization for a gunshot wound.[10] Appellant does not dispute this fact. Thereafter, defendant failed to appear on two occasions and several defense continuances were had. On April 10, 1976, the following entry was made:

"4/10/76 Defendant in Court, case continued until 4/16/76; 4/28/76 Deft's Req; 5/12/76; 6/2/76; 6/7/76."

In the absence of any information in the record, or explanation in the briefs, a reasonable interpretation of this entry indicates that the April 28th date was based on defendant's motion; and that subsequent dates appear to be *sua sponte* continuances by the court. No reason is indicated for the fifty-eight day delay to June 7, 1976, twenty-eight days beyond that authorized by R. C. 2945.71.[11]

The provisions of R. C. 2945.71 *et seq.* are mandatory

---

of record, or against whom a charge of minor misdemeanor is pending in a court of record, shall be brought to trial within thirty days after his arrest or the service of summons."

R. C. 4511.99 and Section 403.99(a)(1) of the Codified Ordinances of the city of Cleveland provide that on the first offense (which is the case here), the charges herein shall be treated as minor misdemeanors.

[10] The thirty day time limit within which an accused must be brought to trial is tolled by such a contingency. R. C. 2945.72(B).

[11] The time lapse from defendant's arrest to trial is as follows:

|  | Delays Chargeable to Defendant | All other Delays |
|---|---|---|
| 12-5-76 Defendant in hospital. Continued until 1-16-76. | 42 days | |
| 1-16-76 Defendant not in court. Next in court 1-24-76. | 8 days | |
| 1-24-76 Case continued until 2-13-76—Defendant's request. | 20 days | |
| 2-13-76—Case continued until | | 12 days |
| 2-25-76; 3-24-76—Defendant's request. | 27 days | |
| 3-24-76—Defendant not in court. Next in court 4-10-76. | 17 days | |
| 4-10-76—Case continued until | | 6 days |
| 4-16-76, 4-28-76—Defendant's request; | 12 days | |
| 5-12-76; 6-2-76; 6-7-76 | | 40 days |
|  | 126 days | 58 days |

and must be strictly adhered to by the court. *State* v. *Pudlock* (1975), 44 Ohio St. 2d 104. However, R. C. 2945.72 authorizes an extension of the requisite time limitations under certain prescribed circumstances. That statute reads in pertinent part as follows:

"Extension of time for hearing or trial.

"The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following: * * *

"(H) The period of any continuance granted on the accused's own motion, and the *period of any reasonable continuance granted other than upon the accused's own motion.*" (Emphasis added.)

R. C. 2945.72 speaks in broad terms; however, loose construction of its provisions would "undercut the implementations of the 'speedy trial' provisions within R. C. 2945.71 * * *." *State* v. *Pudlock, supra* at 106. A liberal interpretation of the statute must not be employed to extend the requisite time limits. *State* v. *Lee* (1976), 48 Ohio St. 2d 208; *State* v. *Pudlock, supra.*

A brief *sua sponte* continuance in order to accommodate the court's crowded docket is reasonable within the meaning of R. C. 2945.72(H). *Oakwood* v. *Ferrante* (1975), 44 Ohio App. 2d 318. Nevertheless, the record must *affirmatively demonstrate* that the continuance was reasonable. Mere entries by the trial court are not sufficient for this purpose. *State* v. *Lee, supra* at 209. While trial court proceedings are generally presumed to be regular, a contrary rule is necessary to preserve the intent of the speedy trial rule. *Id.* When a continuance is granted pursuant to R. C. 2945.72(H), the court's journal entry must specify the reason therefor. *Oakwood* v. *Ferrante, supra,* at 324.

In the present case, the record is silent as to the reason for any delay subsequent to April 28, 1976. We cannot imply the granting of a reasonable *sua sponte* continuance from the present facts. *Id.,* at 323.

Appellee alleges that defendant waived his rights under the speedy trial rule when he requested a continuance on two occasions and when he failed to appear on two

scheduled trial dates. Appellee contends that this waiver appears on the jacket of the traffic ticket. The contention is not well taken. A careful study of the jacket reveals no indication of defendant's waiver of his right to a prompt trial. Moreover, it is axiomatic that the court speaks through its journal, and not through "markings" on the jacket. There is no indication of any waiver in the court's journal. Any purported entries appearing on the jacket of the ticket cannot be considered here since the court speaks only through its journal. *Coffman* v. *Coffman* (1945), 76 Ohio App. 330; *McMillen* v. *Indust. Comm.* (1941), 34 Ohio Law Abs. 435. Although we cannot condone defendant's conduct in these instances, neither can we ignore the specific statutory provisions designed to govern in such cases. R. C. 2945.72(D) and (H) provide for an *extension* of the requisite time limit when there is a delay occasioned by the neglect or improper act of the accused or when there is a postponement due to a defense request for a continuance. Given these extensions, there was still a delay of fifty-eight days not attributable to the defendant. Furthermore, even if we were to start the running of the thirty-day period anew from the date of defendant's last requested continuance, defendant still would not have been brought to trial within thirty days.

Appellee also argues that defendant's failure to object to the delay prior to the date of trial constitutes a waiver of his rights to a prompt and speedy adjudication of the charges. The state relies upon *State* v. *Westbrook* (1975), 47 Ohio App. 2d 211, in support of its position. However, such reliance is misplaced in view of the Supreme Court of Ohio's recent decision in *State* v. *Singer* (1977), 50 Ohio St. 2d 103. In *Singer,* the court held that the defendant's failure to object to setting the trial date beyond the time authorized by R. C. 2945.71 did not constitute an acquiescence in the delay. The court interpreted R. C. 2945.71 *et seq.* as imposing an affirmative obligation upon the state and the court to bring the accused to trial within the statutory period. *Id.*, at 105. Defendant need not object to enforce this right but rather may file a motion

for discharge *"at or prior to the commencement of the trial."* (Emphasis added.) *See also, State* v. *Coatoam* (1975), 45 Ohio App. 2d 183; *Cincinnati* v. *Williams* (1975), 44 Ohio App. 2d 143.

In the present case, defendant made an oral motion for discharge prior to the start of his trial and was thus in compliance with R. C. 2945.73. His failure to object at an earlier date cannot be deemed to be a waiver. *State* v. *Singer, supra.*

An accused is entitled to discharge if he is not brought to trial within the time required by R. C. 2945.71 and 2945.72. R. C. 2945.73(B). As appellant was not brought to trial within thirty days in accordance with applicable law, and there is no affirmative demonstration that the *sua sponte* continuances were necessary or reasonable, we are forced to conclude that his convictions were improper.

This assignment of error is sustained.

VI.

For his sixth and final assignment of error, appellant alleges that there are other errors apparent on the face of the record that occurred during the course of the proceedings. This assignment of error is not well taken. "Errors not specifically pointed out in the record and separately argued by brief may be disregarded." App. R. 12(A).

*Judgment reversed.*

DAY, C. J., and JACKSON, J., concur.