OPINION
 STATEMENT OF THE FACTS AND CASE {¶ 1} On August 9, 2001, at approximately 6:50 a.m., Jennifer Lamberjack walked out the back door of her parent's house when someone came around the corner with an exacto knife and twine rope tied into a noose. Lamberjack recognized the person as Steven Nieb, the Appellant, because the two had dated previously.
 {¶ 2} Appellant placed the noose around Lamberjack's neck and tightened it. He then forced her to unlock the door, re-enter the house and lie down on the floor. Appellant then
 {¶ 3} tore off her shorts and forced her to phone her employer, Cosmo Plastics, and report off for a personal day.
 {¶ 4} Lamberjack's supervisor, John Sabino, testified that he received the telephone call from Lamberjack and that she seemed to him to be on edge.
 {¶ 5} Appellant forced Lamberjack to have sexual intercourse with him three separate times: once on the living room couch and two different times in her upstairs bedroom. He also forced her to cook scrambled eggs for him, which he then refused to eat, instead taking a whiskey bottle from the liquor cabinet
 {¶ 6} Sometime around noon, Appellant forced Lamberjack into his car and drove her to his parent's house.
 {¶ 7} Lamberjack told Appellant's mother what had transpired earlier in the morning and that she felt hot and dirty.
 {¶ 8} Appellant's mother allowed Lamberjack to take a bath at her house and then drove her to her own car.
 {¶ 9} Upon returning to her home, Lamberjack telephoned some friends who convinced her to telephone the Rape Crisis Center and the Perry Police Department.
 {¶ 10} One of Lamberjack's friends drove her to Aultman Hospital where a rape kit was performed.
 {¶ 11} The following day, Lamberjack made a tape-recorded statement for Detective Wellman of the Perry Police Department.
 {¶ 12} The police also searched Lamberjack's house and located orange twine rope, with hair samples, in a trash can. They also confiscated the whiskey bottle.
 {¶ 13} The Stark County Crime Lab identified the fingerprints on the whiskey bottle as Appellant's. His DNA also conclusively matched the vaginal swabs taken from the rape kit.
 {¶ 14} On August 10, 2001, the Perry Township Police Department arrested Appellant and charged him with three counts of Rape, one count of Kidnapping and one count of Aggravated Burglary.
 {¶ 15} On August 17, 2001, Appellant was directly indicted by the Stark County Grand Jury
 {¶ 16} and charged with three counts of Rape, one count of Kidnapping and one count of Aggravated Burglary, with each count of Rape containing a sexually violent predator specification, pursuant to R.C. § 2941.148 and the Kidnapping charge containing a sexual motivation specification, pursuant to R.C. § 2941.147.
 {¶ 17} On September 10, 2001, Appellant filed a Motion in Limine requesting that the sexually violent predator specifications be dismissed.
 {¶ 18} On October 5, 2001, the trial court granted Appellant's Motion in Limine.
 {¶ 19} On October 25, 2001, the case proceed to jury trial, which resulted in verdicts of guilty on all counts of the indictment and the sexual motivation specification to the Kidnapping charge.
 {¶ 20} The trial court sentenced Appellant to ten years incarceration on each of the counts of Rape, ten years on the Kidnapping charge and ten years on the count of Aggravated Burglary. The court indicated that the second and third counts of Rape were to be served concurrently to each other but consecutive to the first count of Rape. Additionally, the sentences for the Kidnapping and the Aggravated Burglary were to run concurrent to each other but consecutive to the rape counts. Appellant's total sentence was a term of incarceration of thirty (30) years.
 {¶ 21} On November 13, 2001, Appellant filed the instant appeal, assigning the following sole error for review:
ASSIGNMENT OF ERROR
 {¶ 22} "THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO MOVE, PURSUANT TO CRIMINAL RULE 16(B)(1)(G), FOR AN IN CAMERA INSPECTION OF STATEMENTS MADE BY THE VICTIM TO THE POLICE PRIOR TO BEGINNING THE VICTIM'S CROSS-EXAMINATION."
 {¶ 23} Appellant argues that his trial counsel was ineffective because he failed to request an in camera inspection of the victims tape-recorded statement. We disagree. Counsel is not ineffective unless his performance fell below an objective standard of reasonable representation, and the defendant was prejudiced by such performance.Strickland v. Washington (1984), 466 U.S. 668, 687; State v. Bradley
(1989), 42 Ohio St.3d 136. To demonstrate prejudice, the defendant must show that but for counsel's errors, the result of proceeding would have been different. Id.
 {¶ 24} Appellant's assignment of error concerns his counsel's failure to request an in camera inspection of victim's written witness statements and police reports available, pursuant to Crim.R. 16(B)(1)(g) for the purposes of impeaching the state's witnesses on cross-examination.
 {¶ 25} Prior to trial, the defendant may file a motion which seeks discovery of reports of either the testifying officer or a witness' narrative statement, which would be substantially recorded in verbatim without selection or interpretation by the transcriber. State v. Johnson (1978), 62 Ohio App.2d 31.
 {¶ 26} Pursuant to Crim.R. 16, where there has been a demand for an in camera inspection of a witness' statement, it is mandatory that the court grant the defendant's motion for an inspection. Cleveland v.Austin (1978), 55 Ohio App.2d 215. The defendant, however, is not entitled to discovery of all reports. State v. Smith (1976),50 Ohio App.2d 183.
 {¶ 27} Criminal Rule 16(B)(1)(g) states, in part:
 {¶ 28} "(A) Demand for Discovery. Upon written request each party shall forthwith provide the discovery herein allowed. Motions for discovery shall certify that demand for discovery has been made and the discovery has not been provided.
 {¶ 29} "(B) Disclosure of Evidence by the Prosecuting Attorney.
 {¶ 30} "(1) Information subject to disclosure.
 {¶ 31} "* * *
 {¶ 32} "(g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 {¶ 33} "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 {¶ 34} "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 {¶ 35} "Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."
 {¶ 36} Appellant argues that trial counsel's failure to follow Crim.R. 16 concerning in camera inspection of witness statements constitutes ineffective assistance of counsel. We cannot determine whether counsel erred, or whether appellant was prejudiced by any error, as the witness statements are not a part of the record on appeal. Statev. Bachtel, Holmes App. No. 99-CA-011, 2002 Ohio 2528. And since we are limited to the record, we must conclude that based upon the evidence before us, there has been no showing of ineffective assistance of counsel.
 {¶ 37} Appellant's sole assignment of error is overruled.
 {¶ 38} The judgment of the Stark County Common Pleas Court is affirmed.
By Boggins, J., Hoffman, P.J., and Wise, J., concur.
Topic: Ineffective assistance of counsel, Crim.R. 16(B((1)(G)