[Cite as *Cleveland v. Bendycki*, 2014-Ohio-3594.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100909**

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## GEORGE BENDYCKI

DEFENDANT-APPELLANT

## JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART
### AND REMANDED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2013 TRD 054202

**BEFORE:** Jones, P.J., Keough, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 21, 2014

**ATTORNEY FOR APPELLANT**

Steve W. Canfil
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
City of Cleveland Director of Law

BY: Victor R. Perez
Chief Assistant City Prosecutor

BY:   Katherine Maurath
Assistant City Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant George Bendycki appeals his convictions for no driver's license and impeding the flow of traffic, which were rendered after a bench trial. We affirm in part and reverse in part.

{¶2} At trial, Officer Janell Rutherford of the Cleveland police testified that she was on routine patrol when she encountered Bendycki. Specifically, Officer Rutherford was driving southbound on West 117th Street, near where it intersects Berea Road, and noticed that traffic was heavily backing up. The officer thought that maybe there was an accident, but on closer investigation, she saw that Bendycki, who was in the center lane on a motorized "scooter" driving approximately 15 miles per hour, was the cause of the back up. Rutherford drove next to Bendycki and asked him to drive the scooter near the curb so that traffic could pass him.

{¶3} Bendycki told the officer that he was "doing nothing wrong" and continued riding in the center lane. Officer Rutherford again asked Bendycki to ride near the curb. Bendycki, however, sped up to approximately 30 miles per hour, passed in front of the officer's police cruiser, and then slowed down. Officer Rutherford activated her sirens and lights to pull Bendycki over.

{¶4} Bendycki initially refused to pull over. After Officer Rutherford directed him over her loudspeaker to pull over, he complied. The officer testified that, after pulling over, Bendycki "jumped off the scooter [and] went for * * * something in his seat or a little case on the back, and I told him don't move. He still * * * went [in] there,

pulled out paper yelling and screaming saying I don't have authority to pull him over * * *."

{¶5} Bendycki had title for the vehicle, which was listed as a "power-assisted bicycle." Bendycki testified that he was in the curb lane when Officer Rutherford, driving in the left lane, approached him. He denied ever being in the left or middle lane. Because he was wearing a helmet, he could not hear her, and only pulled over after she activated her lights and motioned for him to pull over.

{¶6} Bendycki testified that he did not have a driver's license because he believed that he was not required to have one for his "electric powered bicycle." He testified that the bicycle's maximum speed was 20 miles per hour and, thus, denied ever speeding up to 30 miles per hour.

{¶7} On this testimony, the trial court found Bendycki guilty of both charges. Bendycki raises the following two errors for our review:

> I. The trial court erred in finding appellant guilty of driving without a license when the citation issued to him was defective and failed to charge an offense.

> II. The trial court erred [in] finding appellant guilty of impeding the flow of traffic when the city provided insufficient evidence to establish every element of the offense.

**The Driving Car without a License Citation**

{¶8} In the area of the issued citation titled "Driver License," Officer Rutherford checked the box indicating "None." There was no indication of which revised code section or city ordinance was violated by Bendycki not having a driver's license. For his

first assigned error, Bendycki contends that the citation was defective in charging him of driving without a license.

{¶9} We initially consider whether Bendycki has waived this issue for appeal, as contended by the city. The issue was raised for the first time at the trial court level as a defense objection during the city's rebuttal closing argument. Crim.R. 12(C) governs pretrial motions. The rule states, in part, that the following must be raised prior to trial:

> (2) Defenses and objections based on defects in the indictment, information, or complaint (*other than failure* to show jurisdiction in the court or *to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding*).

(Emphasis added.) Crim.R. 12(C)(2).

{¶10} Thus, under Crim.R. 12(C)(2), Bendycki did not waive the issue of failure to charge an offense. We therefore go on to consider his contention that the citation did not charge him with driving without a license.

{¶11} This court has previously held that, although a traffic ticket may contain sufficient language to apprise an offender of the nature of the charge, if it does not contain a reference to the correct ordinance or statute violated, it is fatally deficient, unless amended. *Cleveland v. Austin*, 55 Ohio App.2d 215, 380 N.E.2d 1357 (8th Dist.1978); *Cleveland Hts. v. Perryman*, 8 Ohio App.3d 443, 457 N.E.2d 926 (8th Dist.1983); *N. Olmsted v. Greiner*, 9 Ohio App.3d 158, 458 N.E.2d 1284 (8th Dist.1983).

{¶12} The citation issued against Bendycki did not refer to any ordinance or statute, and the city never amended the charge to reflect what ordinance or statute Bendycki allegedly violated. As such, the citation was fatally defective in this regard.

**{¶13}** The first assignment of error is, therefore, sustained.

**Sufficiency of Evidence:    Impeding the Flow of Traffic**

**{¶14}** The defense moved the court to dismiss the impeding the flow of traffic charge under Crim.R. 29; the motion was denied.   Bendycki now claims in his second assignment of error that the trial court erred in denying his motion.

**{¶15}**   Review for sufficiency of the evidence is a review of the adequacy of the evidence and resolves whether the evidence introduced at trial was legally sufficient as a matter of law to support a verdict.   *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."   *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).   The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact.   *Jenks* at 273.   If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant.   *Thompkins* at 387.

**{¶16}** Bendycki was convicted of impeding the flow of traffic under Cleveland Codified Ordinance 433.04.   The ordinance provides in relevant part as follows:

> (a)    No person shall stop or operate a vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with law.

{¶17} Bendycki contends that the evidence was insufficient to sustain the conviction because (1) Rutherford did not testify as to what the speed limit was and (2) Rutherford did not testify that Bendycki was creating a safety risk.   We are not persuaded by either contention.

{¶18} The ordinance is not written quantitatively; that is, it does not require that a driver be traveling at a certain speed below the speed limit.   Rather, it states that a driver impedes the flow of traffic when he travels "at such a slow speed as to impede or block the normal and reasonable movement of traffic."   Officer Rutherford testified that at the speed Bendycki was traveling, which she estimated to be 15 miles per hour, he was causing traffic to heavily back-up.   In fact, until she saw the cause of the back-up, she thought there had been a car accident.

{¶19} Further, the ordinance does not state that a safety risk must be created.   It provides, instead, that the driver's slow speed must "impede or block the normal and reasonable movement of traffic."   Again, Rutherford's testimony was sufficient to demonstrate that Bendycki's operation of his scooter impeded or blocked the normal and reasonable movement of traffic.

{¶20} In light of the above, the second assignment of error is overruled.

{¶21} Judgment affirmed in part and reversed in part.   Case remanded with instructions to vacate the driving without a license conviction.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland

Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN T. GALLAGHER, J., CONCUR