[Cite as *Strongsville v. Abouelainein*, 2016-Ohio-19.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102608

---

## CITY OF STRONGSVILLE

PLAINTIFF-APPELLEE

vs.

## FADI ABOUELAINEIN

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Berea Municipal Court
Case No. 14TRD04953

**BEFORE:**  Blackmon, J., E.T. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:**  January 7, 2016

**ATTORNEY FOR APPELLANT**

Alan H. Kraus
Lazzaro and Kraus
20133 Farnsleigh Road, 2nd Floor
Shaker Heights, Ohio 44122


**ATTORNEY FOR APPELLEE**

George F. Lonjak
Prosecuting Attorney
City of Strongsville
614 Superior Avenue
Suite 1310
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} In this accelerated appeal, appellant Fadi Abouelainein ("Abouelainein") appeals his conviction for violating Strongsville Codified Ordinances 432.08 (a) and (b) and assigns the following two errors for our review:

> I. The trial court erred in finding appellant guilty for the traffic offense under Strongsville Codified Ordinances 432.08(a) and (b) as there was insufficient evidence of the essential elements of the traffic violation charged.
>
> II. Appellant's conviction of violating Strongsville Codified Ordinances 432.08(a) and (b) is against the manifest weight of the evidence.

{¶2} Having reviewed the record and pertinent law, we affirm Abouelainein's conviction. The apposite facts follow.

{¶3} On August 4, 2014, as a result of a motor vehicle accident, Abouelainein was charged with violating Strongsville Codified Ordinances 432.08(a) and (b). Abouelainein pled not guilty, and the matter proceeded to a bench trial.

{¶4} The evidence produced at trial indicated that the accident occurred at 4:40 p.m., at the intersection of Pearl Road and South Drive in Strongsville, Ohio. Joshua Novak pulled up to the stop sign on South Road. He wanted to make a left turn onto Pearl Road to head north. In order to do so, he had to go across several lanes of traffic on Pearl Road. There are two regular lanes heading south on Pearl Road in this area, and there was also a multi-turn lane in the center of the road, which is a lane that allows turns in both directions.

**{¶5}** Heather Skebo stopped her car at the Pearl Road and South Drive intersection in the lane closest to the multi-turn lane. According to Skebo, there is a sign instructing vehicles on Pearl Road to not block the South Drive entrance.

**{¶6}** As Novak pulled out cautiously to make his left turn, Abouelainein entered the multi-turn lane on Pearl Road to turn onto Whitney Drive, which was 300 feet past South Drive. As he did so, he hit the front driver's side of Novak's vehicle. According to Skebo and Novak, Abouelainein came "out of nowhere." Novak estimated that Abouelainein was traveling approximately 35 mph.

**{¶7}** Officer Albert Heyne responded to the accident. He stated that other than the arrows on the multi-turn lane, the intersection of Pearl Road and South Drive do not have any traffic control devices controlling the exit and entry to South Drive. The officer cited Abouelainein for misuse of the multi-turn lane. He stated that according to the Ohio Bureau of Motor Vehicles Drivers' Handbook, a driver may not enter the multi-turning lane until the driver is preparing to make the turn. It is not to be used for passing other drivers. He stated that the only reason Abouelainein would have been in that lane was to take a left turn onto Whitney Drive, which was 300 feet past South Drive. There was nowhere else to make a left turn. Therefore, he concluded that Abouelainein must have been using the multi-turn lane in order to pass the traffic that was backed up on Pearl Road to get to Whitney. Abouelainein did not testify.

**{¶8}** The trial court concluded that Abouelainein violated the traffic ordinance and ordered Abouelainein to pay a $50 fine plus court costs. The matter was stayed pending appeal.

## Sufficiency of the Evidence

**{¶9}** Abouelainein argues that the evidence in support of his conviction for the traffic violation was insufficient.

**{¶10}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. *Cleveland v. Pate*, 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, 8th Dist. Cuyahoga No. 95095, 2011-Ohio-1241, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386. A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the prosecution has met its burden of production at trial. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.

**{¶11}** The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶12} Abouelainein was cited under Strongsville Codified Ordinances 432.08(a) and (b). These sections provide as follows:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic or wherever traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

> (a) A vehicle shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

> (b) Upon a roadway, which is divided into three lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway is clearly visible and such center lane is clear of traffic within a safe distance, or when preparing for a left turn, or where such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceedings and is posted with signs to give notice of such allocation.

{¶13} In the instant case, the accident occurred when Abouelainein drove his vehicle in the Pearl Road multi-turn lane in an area where there was nowhere for him to turn for at least 300 more feet. Although at trial Abouelainein's attorney made much of the fact that there was no sign to give notice of the multi-lane allocation, Officer Heyne testified that the pavement was clearly marked with arrows. According to the officer, the Ohio Bureau of Motor Vehicles Handbook of Motor Vehicle Laws sets forth the law governing multi-turn lanes. The handbook states that the lane "must not be used for passing. It may be used only to make the turning movement. Vehicles from either direction may use the lane immediately prior to making a left hand turn." Using the multi-turn lane for 300 feet prior to making a left hand turn is not the proper use of a

multi-turn lane. This was not a dedicated left hand turn lane, but a lane to be used by traffic proceeding in both directions. The lane allows an area to wait to turn without impeding the traffic in the other lanes. Here, the evidence showed the lane was marked with multi-directional left arrows, indicating that this was not a dedicated left turn lane, but a lane to be shared with oncoming traffic. Thus, there was sufficient evidence that Abouelainein violated Strongsville Codified Ordinances 432.08(b).

{¶14} Moreover, both Novak and Skebo testified that Abouelainein was traveling at a high rate of speed and "came out of nowhere." This was an area congested with rush-hour traffic. Thus, Abouelainein was driving through the area without first ascertaining if it was safe to proceed. Thus, there was also sufficient evidence that Abouelainein violated Strongsville Codified Ordinances 432.08(a).

{¶15} Abouelainein also contends that his citation failed to explicitly state the exact section he violated. His ticket stated "illegal lane usage" and cited to Strongsville Codified Ordinances 432.08, without telling him which section of that ordinance he violated. "Traffic offenses need not be issued with the specificity of indictments." *Cleveland v. Austin*, 55 Ohio App.2d 215, 220, 380 N.E.2d 1357 (8th Dist.1978). While a traffic citation must provide notice of the nature of the charge, that notice can be satisfied where the ticket indicates the basic facts and sets forth the ordinance at issue. *Bellville v. Kieffaber*, 114 Ohio St.3d 124, 2007-Ohio-3763, 870 N.E.2d 697, ¶ 19, citing *Austin*. In the instant case, the ticket adequately advised Abouelainein of the charge he was facing. Abouelainein's first assigned error is overruled.

## Manifest Weight of the Evidence

{¶16} Abouelainein also contends that his convictions were against the manifest weight of the evidence.

{¶17} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id*. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id*. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id*. at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id*. at ¶ 25.

{¶18} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight

grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶19}** Abouelainein has failed to cite to any conflicting evidence. Therefore, we conclude there is no evidence that the trial court "in resolving conflicts in the evidence" lost its way so that Abouelainein's conviction constituted a "manifest miscarriage of justice." In the event he is contending that Novak's behavior after the accident, where he apologized to Abouelainein, conflicted with his testimony at trial that Abouelainein was at fault, the trial court did not err by resolving the conflict. Novak testified at trial that he apologized because it was his first accident and he was scared. Accordingly, Abouelainein's second assigned error is overruled.

**{¶20}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Berea Municipal Court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS;
MELODY J. STEWART, J., DISSENTS

(SEE ATTACHED DISSENTING OPINION)

MELODY J. STEWART, J., DISSENTING:

{¶21} By its own terms, Strongsville Codified Ordinances 432.08(b) states that a vehicle shall not be driven in the center lane except "when preparing for a left turn." When Abouelainein entered the center turn lane on Pearl Road, that lane was painted with an arrow indicating a left turn. As the police officer indicated at trial, that left-turn arrow indicated that from that point forward, the lane was dedicated to a left turn onto Whitney Drive because there was no other place to make a left turn prior to Whitney Drive. That being the case, Abouelainein entered the center lane with the intent to make a left turn. If he passed cars while doing so, that act was incidental to making the turn. To accept the majority's interpretation of the ordinance would mean that under no circumstances could a driver enter a turn lane if doing so resulted in the center lane driver passing another vehicle in a through lane. That would make center turn lanes useless because turn lanes are designed to alleviate congestion at intersections, a goal that necessarily requires that some drivers who enter turn lanes would pass through drivers waiting. If the city of Strongsville does not want drivers entering the center turn lane where Abouelainein entered, in this case more than 300 feet from the only left turn that can be made, the city should not have a left turn arrow prominently painted in the center lane and more than 300 feet from Whitney Drive, indicating exactly the opposite. The location of the left turn arrow baits — no encourages — drivers who want to turn left at Whitney

Drive to proceed in a way that the trial court and the majority opinion have determined to be illegal. Drivers beware.

{¶22} Finally, there was likewise no evidence to show that Abouelainein violated Strongsville Codified Ordinances 432.08(a), which states that a vehicle shall not be moved from a lane of traffic until the driver has first ascertained that such movement can be made with safety. Abouelainein had the right of way because there was no traffic signal on Pearl Road at its intersection with South Drive. The driver on South Drive had a stop sign and thus had the duty to yield to oncoming traffic when making a left turn into traffic. *See* R.C. 4511.43(A). Although the driver said that he proceeded cautiously, he was not cautious enough and failed to yield to Abouelainein.

{¶23} For these reasons, I respectfully dissent and would vacate the judgment.