OPINION
{¶ 1} Defendant-appellant Kimberly Valdez appeals her conviction and sentence from the Licking County Municipal Court on one count of driving under the influence of alcohol. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On May 12, 2005, appellant was cited and arrested for driving under the influence of alcohol/drugs in violation of R.C.4511.19(A)(1). At her arraignment on May 18, 2005, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, on June 6, 2005, appellant filed a motion to dismiss the complaint, arguing that the traffic ticket issued to her did not state an offense. Appellant specifically argued that "[t]here is no penalty for violating R.C. 4511.19(A)(1)." On the same date, appellant filed a Motion to Suppress, arguing that the stop of her vehicle was unreasonable.
 {¶ 4} Thereafter, on July 7, 2005, appellee filed a Motion to Amend the section number on the traffic ticket from R.C.4511.19(A)(1) to R.C. 4511.19(A)(1)(a). Appellee, in its motion, alleged that the amendment "would clarify the alleged offense and would not change the name or identity of the crime charged." As memorialized in an Entry filed on July 21, 2005, appellee's motion was granted.
 {¶ 5} A suppression hearing was held on July 7, 2005. The following testimony was adduced at the hearing.
 {¶ 6} On May 12, 2005, Patrolman James Oberfield of the Newark Police Department was in uniform in a marked cruiser at approximately 3:00 a.m. As he was sitting in the driveway of a parking center behind the Duke Gas Station, a car left the Duke Gas Station and pulled up beside the cruiser. The female driver in the car told Patrolman Oberfield that "the car that was just leaving the Duke station now there was a female driving it and she was very intoxicated." Transcript of July 7, 2005, hearing at 7. The patrolman then began following the car that the female driver had pointed out to him.
 {¶ 7} As he was following the car, which was driven by appellant, Patrolman Oberfield noticed that the car was only traveling about ten miles an hour and that the car, while making a turn, cut the corner short. The following is an excerpt from the patrolman's testimony:
 {¶ 8} "Q. Cut the corner short to Riverview Road?
 {¶ 9} "A. Yes. It was left of center . . . it was actually left of center on Riverview Road. If there would have been a car there she would have been in oncoming traffic. Um . . . the Cavalier continued going east on Riverview, uh . . . at about ten (10) miles an hour, and then saw it cross over the double yellow line approximately a third of the way twice.
 {¶ 10} "Q. What do you mean a third of the way?
 {¶ 11} "A. Uh . . . I'd say about where the driver was sitting.
 {¶ 12} "Q. So, a third of her car was over the middle centerline?
 {¶ 13} "A. Yes it was.
 {¶ 14} "Q. Ok, And then what happened next?
 {¶ 15} "A. I came to the railroad tracks; crossed that. She went left of center again.
 {¶ 16} "Q. After the railroad tracks?
 {¶ 17} "A. Yes, she did.
 {¶ 18} "Q. How far again?
 {¶ 19} "A. About a car or about a ____uh____ her left wheels were over the double yellow line at that time. Um . . .
 {¶ 20} "Q. And that was right after the railroad tracks?
 {¶ 21} "A. Yes, it was." Transcript of July 7, 2005, hearing at 8-9.
 {¶ 22} Patrolman Oberfield then activated his emergency lights and pulled appellant's car over. When he approached the car, he noticed that appellant's eyes were glassy and her speech was slurred. In addition, appellant fumbled in her purse and in the glove box while looking for her driver's license and there was a slight odor of alcohol about her. Appellant told the patrolman that she had been drinking. The patrolman then administered field sobriety tests to appellant. According to Patrolman Oberfield, appellant exhibited all six clues on the horizontal gaze nystagmus test and could not keep her balance on the walk-and-turn test. The patrolman also testified that appellant started three times before he told her to do so on the walk-and-turn test and "never touched heel to toe." Transcript of July 7, 2005, hearing at 11. With respect to the one-leg stand, the patrolman testified that appellant was unable to keep her foot up past the count of three despite four attempts to do so.
 {¶ 23} Appellant was then arrested for driving under the influence of alcohol. Appellant refused to take a BAC (blood alcohol content) test.
 {¶ 24} The following testimony was adduced when Patrolman Oberfield was questioned about the condition of the road on the night in question:
 {¶ 25} "A. Riverview Road. It was dry.
 {¶ 26} "Q. Any potholes?
 {¶ 27} "A. No. There's no potholes in that road.
 {¶ 28} "Q. Um. I'm going to show you a picture. You first testified that it was paved, but was this road in the same condition that night?
 {¶ 29} "A. Yes.
 {¶ 30} "Q. Ok. A few potholes have been patched, correct?
 {¶ 31} "A. Yes.
 {¶ 32} "Q. Okay. Now a few potholes have been patched in Plaintiff's Exhibit number six (6). Was that the lane the Defendant was traveling in that night?
 {¶ 33} "A. No. That's the northbound lane of Mt. Vernon Road at Riverview.
 {¶ 34} "Q. Ok. And that was not . . .
 {¶ 35} "A. No. That was . . . she would be completely left of center to be.
 {¶ 36} "Q. While you were following the Defendant did you having [sic] any trouble avoiding potholes or hit any of the potholes?
 {¶ 37} "A. No I didn't. Transcript of July 7, 2005, hearing at 13-14.
 {¶ 38} At the suppression hearing, appellant testified that she went left of center before going over railroad tracks in order to avoid potholes in the road. On cross-examination, appellant testified that she had only one drink that evening.
 {¶ 39} At the conclusion of the suppression hearing, the trial court took the matter under advisement. Pursuant to a Decision and Entry filed on August 10, 2005, the trial court overruled appellant's Motion to Suppress.
 {¶ 40} Thereafter, a bench trial was held on September 7, 2005. At the conclusion of the bench trial, the court found appellant guilty of driving under the influence of alcohol. The trial court, in its September 7, 2005, Judgment Entry of Conviction, indicated that it found appellant guilty of "operating a vehicle with a . . . prohibited concentration of alcohol in his/her blood, breath, or urine in violation of R.C.4511.19(A)(1) (a-e)."
 {¶ 41} Appellant now raises the following assignments of error on appeal:
 {¶ 42} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S PRE-PLEA MOTION TO DISMISS.
 {¶ 43} "II. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR ERRED IN PERMITTING THE APPELLEE TO AMEND THE COMPLAINT.
 {¶ 44} "III. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS DUE TO AN UNLAWFUL STOP.
 {¶ 45} "IV. THE GUILTY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 46} "V. THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF R.C. 4511.19(A)(1) (a-e)."
 I, II {¶ 47} Appellant, in her first assignment of error, argues that the trial court erred in denying her June 6, 2005, motion to dismiss the complaint. In her second assignment of error, appellant contends that the trial court erred in permitting appellee to amend the same. We disagree with respect to both assignments of error.
 {¶ 48} Appellant, in her June 6, 2005, motion, argued that the criminal complaint against her should be dismissed since the traffic ticket issued to her cited a violation of R.C.4511.19(A)(1) without reference to a specific subsection. Appellant notes that there is no penalty for violating R.C.4511.19(A)(1).
 {¶ 49} However, a complaint prepared in accordance with Traf. R. 3 merely needs to advise the defendant of the offense with which he is charged in such a manner that can be readily understood by a person making a reasonable attempt to understand.City of Barberton v. O'Connor (1985), 17 Ohio St.3d 218, 221,478 N.E.2d 803. See also Cleveland v. Austin (1978),55 Ohio App.2d 215, 219, 380 N.E.2d 1357. Given the fact that the ticket issued to appellant included the statutory language set forth in 4511.19(A)(1)(a)[1] notifying appellant that she was being charged with operating a motor vehicle while under the influence of alcohol or drugs and also indicated that appellant had refused a BAC test, it is inconceivable that appellant did not understand what she was being charged with. See State v. Nethers (Sept. 20, 1999), Licking App. No. 99C-A-39, 1999 WL 770637. Since appellant did not submit to a BAC test, she could not reasonably have assumed she was being charged with having a prohibited level of alcohol in her blood.
 {¶ 50} Appellant further contends that the trial court erred in permitting appellee to amend the complaint on July 7, 2005, nearly two months after the alleged offense. The complaint was amended to specify a violation of R.C. 4511.19(A)(1)(a). Appellee now argues that Crim.R. 7(D) does not permit amendment of a non-offense. However, since, as is stated above, appellant received sufficient notice of the charge against her, we find that the trial court did not err in granting appellee's motion to amend.
 {¶ 51} Appellant's first and second assignments of error are, therefore, overruled.
 III {¶ 52} Appellant, in her third assignment of error, argues that the trial court erred in denying her Motion to Suppress. We disagree.
 {¶ 53} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry
(1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; andState v. Guysinger, supra.
 {¶ 54} Appellant specifically argues that the trial court should have granted her Motion to Suppress since the stop of her vehicle by Patrolman Oberfield was unlawful. An investigatory stop is permissible if a law enforcement officer has a reasonable suspicion, based on specific and articulable facts, that the individual to be stopped may be involved in criminal activity.Terry v. Ohio (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868. When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, cert. denied (1988), 488 U.S. 910, 109 S.Ct. 264.
 {¶ 55} In the case sub judice, as is set forth above, testimony was adduced at the suppression hearing that a woman approached Patrolman Oberfield's cruiser and told him that she saw a female leaving the gas station who appeared to be very intoxicated. After the woman pointed out the vehicle to Patrolman Oberfield, he began following the same, which was driven by appellant. While following the vehicle, the patrolman noticed that the same was traveling only ten miles an hour and crossed over the center line of the road by a third of the vehicle's width two times before approaching railroad tracks and then once again after crossing the tracks. While appellant testified that she drove left of center to avoid potholes in the road, Patrolman Oberfield testified that he did not see any potholes in appellant's lane of travel.
 {¶ 56} Based on the foregoing, we find that Patrolman Oberfield had reasonable, articulable suspicion that appellant was driving under the influence of alcohol and that his stop of her vehicle was justified. We find, therefore, that the trial court did not err in overruling appellant's Motion to Suppress.
 {¶ 57} Appellant's third assignment of error is, therefore, overruled.
 IV {¶ 58} Appellant, in her fourth assignment of error, argues that her conviction for driving under the influence of alcohol is against the manifest weight of the evidence. We disagree.
 {¶ 59} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See also State v. Thompkins, 78 Ohio St.3d 380,678 N.E.2d 541, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 60} In the case sub judice, a bench trial was held on September 7, 2005. At the bench trial, Patrolman Oberfield testified that he was on duty on May 12, 2005, and wearing a uniform in a marked cruiser. The patrolman testified that, on such date, a citizen came up to him and stated that she "was just in the Duke Station and had observed the Defendant and she appeared to be very intoxicated to her . . ." Trial Transcript at 8. The citizen pointed out appellant's car to Patrolman Oberfield, who began following the same at approximately 3:00 a.m. The patrolman noticed that appellant's car was traveling only 10 mph in a 35 mph zone.
 {¶ 61} Patrolman Oberfield further testified that he noticed appellant's car go left of center and cross over the double yellow line by approximately a third of a car width. After crossing back over, appellant's car went left of center again. At the time, appellant was traveling 10 mph in a 25 mph zone. After crossing some railroad tracks, appellant went left of center a third time. Patrolman Oberfield then activated his cruiser lights.
 {¶ 62} When questioned about the condition of the road, Patrolman Oberfield testified that he did not observe any potholes or problems in the road that would cause appellant to go left of center. Photographs of the road taken by the patrolman were admitted into evidence.
 {¶ 63} After appellant's car stopped, the patrolman approached the same. According to Patrolman Oberfield, "as I was asking for driver's license and registration she had a glassy eyed stare and her eyes were bloodshot . . . while she was getting things I noticed she did it very slowly." Trial Transcript at 12. The patrolman then had appellant exit her car, which she was unable to do without trouble. Patrolman Oberfield testified that appellant "had to reach the top of her car door and use that for support. And then as we walked toward the back of her car she had her left hand on the side of the car and was using that for support to steady herself." Trial Transcript at 13. As he was administering the horizontal gaze nystagmus test to appellant, the patrolman picked up a "slight odor of alcohol" on appellant and noticed that her eyes were bloodshot and red. Trial Transcript at 13.
 {¶ 64} Patrolman Oberfield further testified that appellant was swaying back and forth as he administered the horizontal gaze nystagmus test to her and that he received six out of six clues on such test. The following testimony was adduced when the patrolman was questioned about the other field sobriety tests that he administered to appellant:
 {¶ 65} "Q. Ok. On the walk-and-turn test what did you observe?
 {¶ 66} "A. What did I observe? Um . . . continue on or start over?
 {¶ 67} "Q. Continue on.
 {¶ 68} "A. Uh . . . walk-and-turn. I got through with the instruction after she tried to start three (3) times. She started. Noticed on the third and fourth step out that she stepped off the line. On the way back on the seventh step that she . . . she um . . . came off the line and started to fall sideways and had to reach out to grab her to keep her from falling.
 {¶ 69} "Q. Did you say you had to reach out to grab her to keep her from falling?
 {¶ 70} "A. Yes. Reached out and grabbed her arm to keep her from falling.
 {¶ 71} "Q. Ok. What happened next?
 {¶ 72} "A. Um . . . she got back on the line and completed the test. Also, noticed that she couldn't keep her arms down at her side. And also that she took ten (10) steps out, which is the incorrect number. It's only supposed to be nine (9). But took nine (9) steps back in.
 {¶ 73} "Q. Ok. Was she able to touch heel to toe on those steps?
 {¶ 74} "A. No, she wasn't. She didn't.
 {¶ 75} "Q. Ok. And what was the next test?
 {¶ 76} "A. Next test was the one-leg-stand.
 {¶ 77} "Q. And did you instruct her on how to do that test?
 {¶ 78} "A. Yes, I did.
 {¶ 79} "Q. Did she state she understood?
 {¶ 80} "A. "Yes, she did.
 {¶ 81} "Q. Ok. And what did you observe?
 {¶ 82} "A. What did I observe? Uh . . . she . . . when she raised her foot she couldn't get past the count of three (3) before putting her foot down.
 {¶ 83} "Q. Ok. And how many times did she attempt this?
 {¶ 84} "A. I attempted four (4) times to have her do this test." Trial Transcript at 14-16. Appellant was then arrested for driving under the influence of alcohol. When asked to submit to a BAC test, appellant refused.
 {¶ 85} At the bench trial, appellant testified that she had imbibed one beer after work. She further testified that she went left of center by the railroad tracks to avoid potholes in road. On cross-examination, appellant testified that she refused to take the BAC because she "knew if I blew I'd probably go over." Trial Transcript at 69. Appellant also testified that she could not explain why Patrolman Oberfield observed her go left of center before the railroad tracks since the potholes she claimed to have to swerve to miss were at the railroad tracks.
 {¶ 86} Based on the foregoing, we find that appellant's conviction for driving under the influence was not against the manifest weight of the evidence. While appellant testified at trial that she swerved to avoid potholes, Patrolman Oberfield testified that there were no potholes in appellant's lane of travel. Moreover, photographs taken by the patrolman failed to show the same. Furthermore, while appellant contends that appellee did not adequately prove that the field sobriety tests were administered in accordance with the National Highway Traffic Safety Administration Manual, we note that "[a] law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." State v. Schmitt, 101 Ohio St.3d 79,801 N.E.2d 446, 2004-Ohio-37, syllabus. Even without consideration of the actual results of the field sobriety tests, we find that, based on the totality of circumstances, including Patrolman Oberfield's observations made during appellant's performance of the same, there was sufficient evidence that appellant was operating a motor vehicle while intoxicated. As is stated above, the patrolman testified that appellant had trouble maintaining her balance during the field sobriety tests, had glassy and bloodshot eyes and smelled of alcohol. The trial court, as trier of fact, was in the best position to assess credibility. Clearly, the trial court found Patrolman Oberfield to be a credible witness.
 {¶ 87} Appellant's fourth assignment of error is, therefore, overruled.
 V {¶ 88} Appellant, in her fifth assignment of error, maintains that the trial court erred in finding her guilty of a violation of R.C. 4511.19(A)(1) (a-e). According to appellant, "[after] the erroneous amendment to R.C. 4511.19(A)(1)(a), the court did not find appellant guilty of such charge."
 {¶ 89} In the case sub judice, the trial court, in its September 7, 2005, Judgment Entry of Conviction, checked a box indicating that it found appellant guilty of "operating a vehicle with a . . . prohibited concentration of alcohol in his/her blood, breath, or urine in violation of R.C. 4511.19(A)(1) (a-e)." Appellant now argues that her conviction should be reversed since there was no evidence adduced at trial that she had a prohibited concentration of alcohol in her blood, breath or urine.
 {¶ 90} A similar issue was raise in State v. Silguero,
Franklin App. No. 02AP-234, 2002-Ohio-6103. In Silguero, the trial court's January 17, 2002, judgment entry stated that the appellant was convicted of murder, a violation of R.C. 2903.01. However, R.C. 2903.01 defined aggravated murder, not murder. The Tenth District Court of Appeals, in such case, remanded the matter for correction of the January 17, 2002, Judgment Entry which cited the incorrect statutory section, holding, in relevant part, as follows: "The record is clear that appellant was found guilty and sentenced for murder, a violation of R.C. 2903.02. Since the trial court may correct clerical errors at any time under Crim.R. 36,[2] this case will be remanded to the trial court to correct the clerical error in its January 17, 2002, judgment entry to reflect the offense for which appellant was convicted. See State v. Lattimore (Feb. 22, 2002), Hamilton App. No. C-010488 (remanding matter for correction of judgment entry which cited incorrect statutory section)." Id at 3.
 {¶ 91} In the case sub judice, the trial court did cite the correct section, R.C. 4511.19(A)(1)(a),[3] but cited the incorrect statutory language. Appellant is correct that she was not found guilty of driving with a prohibited concentration of alcohol in her blood, breath or urine. The inclusion of such language in the trial court's entry clearly was a clerical error.
 {¶ 92} Therefore, appellant's fifth assignment of error is sustained but only to the extent that the trial court committed a clerical error in its September 7, 2005, Judgment Entry, and the cause should be remanded to the trial court to correct its typographical error. See Silguero, supra.
 {¶ 93} Accordingly, the judgment of the Licking County Municipal Court is affirmed and this matter is remanded to the Licking County Municipal Court to correct the clerical error in its September 7, 2005, Judgment Entry to reflect the offense for which appellant was convicted.
By: Edwards, J. Gwin, P.J. and Hoffman, J. concur.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Municipal Court is affirmed and this matter is remanded to correct the clerical error in its September 7, 2005, Judgment Entry. Costs assessed to appellant.
[1] Revised Code 4511.19(A)(1) states, in relevant part, "No person shall operate any vehicle . . . if, at the time of operation . . . (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."
[2] Criminal Rule 36 provides that "[c]lerical mistakes in judgment . . . may be corrected by the court at any time."
[3] The trial court, in its September 7, 2005, Judgment entry actually found appellant guilty of violating R.C. 4511.19(A)(1) (a-e). R.C. 4511.19(A)(1)(a) States that no person shall operate a vehicle while under the influence of alcohol.